**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: *EX PARTE* APPLICATION OF BLUE
SKYE FINANCIAL PARTNERS S.A.R.L. FOR
AN ORDER UNDER 28 U.S.C. § 1782 TO
TAKE EXPEDITED DISCOVERY,

Case No. 22-mc-00171-KPF

**MEMORANDUM OF LAW IN SUPPORT OF REDBIRD CAPITAL PARTNERS LLC'S**
**MOTION TO QUASH SUBPOENA GRANTED PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................1

FACTUAL BACKGROUND...................................................................................5

    I.     The Parties .................................................................................5

    II.    RedBird's Planned Acquisition of AC Milan........................................6

    III.   Blue Skye Sues in Luxembourg .......................................................7

    IV.   The Section 1782 Proceeding............................................................9

ARGUMENT ...................................................................................................10

    I.     Blue Skye Does Not Seek Discovery "For Use" in the Luxembourg
          Actions But Rather to Disrupt the Transaction.....................................11

    II.    Blue Skye Seeks to Circumvent Luxembourg's Discovery Mechanisms. ...........14

    III.   The Subpoena Should Be Quashed Because It Is Overly Broad and
          Unduly Burdensome and Seeks Privileged Communications. ...........................17

          A.    The Subpoena Is Inappropriately Broad and Unduly Burdensome. .........17

          B.    The Subpoena Sweeps in Privileged Documents ...................................22

    IV.   If the Subpoena Is Allowed, Costs Should Be Shifted.......................................22

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Application of Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *4 (S.D.N.Y. 2012) ......................17, 21
*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9401102, at *2
   (S.D.N.Y. Mar. 2, 2017) ..........................................................................................................................19, 20
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) ................................................16
*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117–18 (2d Cir. 2015) ...........................12
*Citizens Union v. Att'y Gen.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)................................................................11
*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)....................................................18, 19
*Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005).................................................22
*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) .........................................................13, 14
*IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 675–76 (2d Cir. 2022)....................................................10
*In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008) ...................................................................15
*In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002)................................................................................................18
*In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ......................................................................17
*In re IPC Do Nordeste, Ltda*, 2012 WL 4448886, at *9 (E.D. Mich. Sept. 25, 2012) ...........................................15
*In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006)......................................................................3, 16
*In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020)...............................23, 24
*In re* Pinchuk, 2014 WL 1328484 (S.D. Fl. Mar. 31, 2014)............................................................................13, 14
*In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019) ......................................24
*In re Vale S.A.*, 2021 WL 311236, at *2 (S.D.N.Y. Jan. 29, 2021)........................................................................22
*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004)..........................................3, 11, 14, 16
*Koopmann v. Robert Bosch, LLC*, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018).......................................4, 22
*Lynch v. City of New York*, 2021 WL 4652305, at *2 (S.D.N.Y. Oct. 5, 2021) .......................................................18
*Mees v. Buiter*, 793 F.3d 291, 301, 302 n.18 (2d Cir. 2015) ..........................................................3, 13, 14, 22
*Nike, Inc. v. Wu*, 2020 WL 257475, at *14 (S.D.N.Y. Jan. 17, 2020)...............................................................23, 24
*Rattray v. City of New York*, 2021 WL 5810903, at *2 (S.D.N.Y. Dec. 6, 2021)....................................................18


**STATUTES**

28 U.S.C. § 1782 .........................................................................................................................................1, 17, 18


**RULES**

Fed R. Civ. P. 26(b)(2)(C)...............................................................................................................................22
Fed. R. Civ. P. 26(b)(1).................................................................................................................................17
Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure .................................................................4, 11, 17, 22

## PRELIMINARY STATEMENT

On June 1, 2022, RedBird Capital Partners LLC ("RedBird") announced that it had entered into a definitive agreement to acquire the Italian soccer team Associazione Calcio Milano S.p.A. ("AC Milan") for 1.2 billion euro.  Blue Skye Financial Partners S.à r.l ("Blue Skye") currently holds less than a 5% stake in AC Milan.  Dkt. 4-1 at 3.  Blue Skye stands to profit from this transaction and its financial backer has publicly praised the purchase price— which represents a significant increase in value since Elliott-affiliated investment funds acquired the team approximately five years ago and then turned around its fortunes on the field and financially.  Ex. 6.[1]  But after first attempting to become a co-investor in the deal, and then to disrupt it for months behind the scenes, Blue Skye has now filed two actions in Luxembourg against more than a dozen defendants, in which it seeks to have the transaction annulled (the "Luxembourg Actions").  Blue Skye also filed this *ex parte* application under 28 U.S.C. § 1782 seeking leave to serve a subpoena on the purchaser RedBird—on whom it seeks to impose an immediate and ongoing duty to produce every single document related to the transaction, mere weeks before it is scheduled to close, supposedly "for use" in the Luxembourg Actions.  That Blue Skye's real intention here is not to obtain discovery that will aid it in establishing its claims in Luxembourg, but to disrupt and increase the costs of the transaction so that it can extract more value than it is entitled to according to its pro rata holdings, is apparent for a number of reasons. *See* Ex. 7 ("Elliott and co-investor Arena Investors see [the lawsuit] as nothing more than an attempt to extract a value to which Blue Skye is not entitled.").

First, the discovery sought from RedBird is not genuinely "for use" in the Luxembourg Actions, as required.  28 U.S.C. § 1782(a).  RedBird is virtually irrelevant to the claims in the

---

[1]  All exhibits are to the Declaration of Anne Champion, filed herewith.

Luxembourg Actions, which revolve around alleged breaches of Blue Skye's contracts with the Elliott affiliates with which Blue Skye collectively owns 99.93% of AC Milan. See Ex. 4; Dkt. 4-1. In Luxembourg, Blue Skye claims that the sellers took actions in violation of one of these contracts, claims it was owed more disclosure and that the sellers left preferable offers from third parties on the table. But RedBird owed no contractual duties to Blue Skye, and has no direct knowledge of Blue Skye's contracts with the sellers, or about other potential buyers. The evidence Blue Skye would need to prevail in the Luxembourg Actions is clearly not in RedBird's possession.

In a further indication of bad faith, Blue Skye's claims of urgency are feigned. Blue Skye filed *ex parte* despite having been threatening to use Section 1782 behind the scenes, telling this Court its petition was "urgent," and that it "will be severely prejudiced if discovery does not proceed expeditiously," Dkt. 2 at 1, 18.[2] The Luxembourg Actions present no cause for urgency. Blue Skye seeks no preliminary relief there—even though it could have—and chose to file the actions on the slowest track available in Luxembourg—a Merits Proceeding—ensuring that the courts there will not determine the merits of Blue Skye's claims for several years. As RedBird's Luxembourg legal expert flatly states, "A party with an urgent need for relief would not file a Merits Proceeding." Declaration of Nicolas Thieltgen ¶ 22 ("Thieltgen Decl."). The only thing "urgent" here is Blue Skye's desire to maximize its leverage by disrupting the transaction before it closes. If, as here, "a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in

---

[2]  *See* Exhibit D to the Declaration of Andrew Ditchfield, filed in support of Elliott Management Company's ("EMC") contemporaneously filed motion to quash

toto"—or in this case, quash the subpoena. *Mees v. Buiter*, 793 F.3d 291, 301, 302 n.18 (2d Cir. 2015).

Second, this petition is an obvious attempt to circumvent discovery restrictions in the Luxembourg Actions, violating the third discretionary factor under the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). Any discovery Blue Skye actually needs to establish its claims can be obtained from parties to the Luxembourg Actions, which include the Elliott entity with which RedBird has been negotiating (Elliott Advisors UK ("EA UK")), entities in the current chain of ownership of AC Milan, and their board members. It is these entities and individuals that will have information about the alleged contractual breaches and other offers to purchase the team, and Blue Skye will have the opportunity to avail itself of document discovery in the Luxembourg Actions. Thieltgen Decl. ¶ 16. In contrast, RedBird is unlikely to be in possession of any relevant documents, and certainly not any that could not be obtained from parties there. But Blue Skye could not make the sweeping document requests it has made here in Luxembourg, which does not allow such open-ended discovery. *Id*. ¶¶ 16, 24. As this Court has previously held, if "the production of [requested] documents is inappropriate under the [foreign jurisdiction's] rules," then "enforcement of [petitioner's] subpoenas would constitute a clear circumvention of the [foreign jurisdiction's] procedures which the Supreme Court expressly prohibited in *Intel*." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006). It is apparent that Blue Skye's real motivation for using Section 1782 is not because RedBird has documents relevant to its claims that it cannot obtain in Luxembourg, but because Section 1782 is the more expedient way to inflict pain now. This Court should not countenance this tactical use of Section 1782.

Third, Blue Skye's subpoena should be quashed because it improperly encompasses privileged material and because it is overly broad and unduly burdensome. As described above, instead of focusing on the substance of its claims in Luxembourg, Blue Skye's subpoena sweeps in every document and communication remotely related to the transaction, something Blue Skye's counsel does not deny. Declaration of Anne Champion ¶ 13 ("Champion Decl."). Many of those documents and communications would be privileged, or would involve confidential communications with potential investors; virtually none would relate to Blue Skye's claims. As set forth in greater detail below, at Argument III, RedBird has asked Blue Skye to narrow its requests or agree to limitations on search and review obligations, such as excluding communications with counsel, but Blue Skye has refused, making it clear that it wants every scrap of paper called for in the subpoena. The collection, search, review, and logging obligations would take weeks or months to comply with at significant expense. This burden is not justified given the overbreadth of the subpoenas, the marginal relevance of the documents sought, and the fact that relevant documents can be obtained in Luxembourg. For this reason, if Blue Skye is allowed any discovery at all, RedBird should be awarded its fees and costs to comply, as contemplated by Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure, which this District has deemed mandatory when "a non-party incurs significant expense from compliance with a subpoena." *Koopmann v. Robert Bosch, LLC*, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018). Such cost-shifting is warranted here given the incredible burden RedBird faces in attempting to satisfy Blue Skye's sweeping subpoena requests, which a reputable and experienced document vendor estimates would cost over $1.7 million, *excluding* privilege logging. Champion Decl. ¶ 14.

4

## FACTUAL BACKGROUND

### I.     The Parties

Respondent RedBird is a private investment firm focused on building high-growth companies with flexible, long-term capital.  Ex. 1; Declaration of Robert Klein ¶ 2 ("Klein Decl.").  RedBird has a long track record of successfully investing in and owning sports franchises.[3]

Petitioner Blue Skye Investment Group is a European investment group that holds a minority interest in Project Redblack, holding less than 5% of the company.[4]  Dkt. 4-1 at 3; Klein Decl. ¶ 4.  Project Redblack is in turn the 100% owner of Rossoneri Sport Investments, Luxembourg, S.A. ("Rossoneri"), which has owned 99.93% of AC Milan since 2017.  Dkt. 4-1 at 3–4; Klein Decl. ¶ 3.

Petitioner Blue Skye has no contracts with RedBird.  Klein Decl. ¶ 4.  Blue Skye, however, mentions in its 1782 Application several agreements governing its relationship with EA UK, Project Redblack, and Rossoneri, which it contends are relevant to the pending actions in Luxembourg that are the basis for its Section 1782 petition.  Dkt. 2 at 3–8.  These include the Redblack Articles of Incorporation, an April 2017 Acquisition Facility Agreement between Project Redblack and Rossoneri, and an investment partnership agreement governing their co-investment in AC Milan.  Ex. 4 at 5–6; Dkt. 3 at ¶¶ 17–24.  RedBird is not a party to any of these agreements.

---

[3]  For example, RedBird is an investor in Fenway Sports Group, the owner of Liverpool Football Club soccer team, the Boston Red Sox baseball team, and the Pittsburgh Penguins hockey team. Ex. 5 at 2.  RedBird is also an investor in the French soccer team Toulouse Football Club and the Indian Premiere League's Rajasthan Royals.  *Id.*

[4]  RedBird directs the Court to the chart of the ownership structure of AC Milan in EMC's contemporaneously filed brief.

## II.     RedBird's Planned Acquisition of AC Milan

RedBird began discussing a potential acquisition of AC Milan with EA UK in the Spring of 2022 (the "Transaction").   Klein Decl. ¶ 3.  RedBird has no direct knowledge of any discussions that EA UK may have had with other potential buyers.  *Id*. ¶¶ 3–4.  On May 26, 2022, RedBird announced that it had entered into a Stock Purchase Agreement pursuant to which RedBird would purchase AC Milan with an expected closing date by September 2022.  Klein Decl. ¶¶ 2, 5; Ex. 6.  As part of the deal, Rossoneri would sell its shares to a Netherlands-based indirect subsidiary of RedBird, Footballco Intermediate Coöperatief U.A. ("Coöp").  Klein Decl. ¶¶ 3–5.  At the time of the announcement, Blue Skye's financial backer publicly praised the purchase price negotiated.  Ex. 6.  And the praise is warranted.  After acquiring AC Milan as a result of a defaulted loan, Elliott's subsequent investment in the team's financial and athletic success—it is the reigning champion of the Italian league—has led the value of AC Milan to rocket to over a billion euro just five years later.  *See* Ex. 6, Ex. 11.

RedBird's discussions have largely been with EA UK; it has had only a handful of direct contacts with Blue Skye, including regarding Blue Skye's interest in becoming an investor in the deal.  Klein Decl. ¶ 4.  EA UK and its affiliates are solely responsible for ensuring that the deal complies with all of its contractual and other obligations.  *Id*. ¶ 5.   Indeed, as is typical in a situation where a buyer such as RedBird does not have clear visibility into the scope and details surrounding those obligations, the selling parties will provide representations and warranties that they have complied with their contractual obligations in connection with the closing of the acquisition.  *Id*. ¶ 5.  At all times it has been RedBird's understanding that the sellers have obtained all necessary approvals for the Transaction to proceed or that it will obtain them in due course as the Transaction moves toward closing.  *Id*. ¶ 5; *see also* Ex. 7.  RedBird has no first-hand knowledge of what those contractual obligations are.  Klein Decl. ¶ 5.

### III.    Blue Skye Sues in Luxembourg

After multiple attempts to disrupt the Transaction laid out in more detail in EMC's contemporaneously filed motion to quash, Blue Skye has brought two lawsuits in Luxembourg alleging breaches of various agreements between and among Blue Skye, Project Redblack, EA UK and related entities, and Rossoneri, and seeking relief including unwinding the acquisition by RedBird of AC Milan, and damages.  The Luxembourg Actions revolve around the alleged contractual obligations that EA UK and its affiliates have to Blue Skye and assertions of misconduct against other parties.  RedBird is not a party to any of the contracts at issue in the Luxembourg Actions, has no contractual obligations of any kind to Blue Skye, and no allegations of fraud are leveled against RedBird or any of its affiliates.  Dkt. 4-1; Ex. 4.

***The Declaratory Action.***  On June 13, 2022, Blue Skye filed an action before the District Court of the City of Luxembourg, against nine defendants, including Project Redblack, Rossoneri, Genio, King George, Coöp, Project Redblack Board Members Giovanni Caslini, Daniela Italia, and Jean-Marc McLean, and AC Milan Director Alfredo Craca, *Blue Skye Financial Partners S.à r.l. c. Project RedBlack S.à r.l. et al.* (the "Declaratory Action").  Dkt. 4-1 at 1–2.  King George and Genio are investment funds advised by affiliates of EA UK.  Coöp, the entity that under the planned Transaction will be the direct owner of AC Milan, is an indirect subsidiary of RedBird.  Blue Skye makes no allegation of wrongdoing against RedBird or any of its affiliates, including Coöp.  Dkt. 4-1 at 15.

There are several types of actions available in Luxembourg, which feature different levels of urgency and varying evidentiary procedures.  Thieltgen Decl. ¶ 5.  The Declaratory Action is a "Merits" action.  *Id*. ¶ 18.  As a Merits Action, the Declaratory Action will likely take two to three years to reach a conclusion in the trial court, and does not seek any immediate relief, which would require filing a Unilateral Action or an Urgent Summary Proceeding under Luxembourg

law. *Id.* ¶¶ 9, 21. Instead, in the Declaratory Action, Blue Skye alleges and seeks a declaration that Project Redblack's decision to waive Rossoneri's pledge of shares in AC Milan required a unanimous resolution of the managers according to the Articles of Association of Project Redblack. Dkt. 4-1 at 11. To be clear, RedBird had nothing to do with any such decision, if in fact any such decision was made. Klein Decl. ¶ 6. Neither did Coöp. *Id.* Moreover, RedBird had no legal ability to impact, in any way, any such decision, if any such decision was made. *Id.* Again, neither did Coöp. *Id.* The gravamen of this claim has nothing to do with RedBird or Coöp—it has to do with allegations related to the sellers' obligations to Blue Skye. Dkt. 4-1.

   ***The SPA Annulment Action.*** On June 27, 2022, Blue Skye initiated a separate Merits Action before the District Court of the City of Luxembourg against 18 defendants. *Blue Skye Financial Partners S.à r.l. and Luxembourg Investment Company 159 S.à r.l. c. Project RedBlack S.à r.l. et al.* Thieltgen Decl. ¶ 19; Ex. 4. These eighteen defendants include EA UK, Project Redblack, Rossoneri, Genio, King George, Coöp, AC Milan subsidiary Milan Real Estate S.p.A., AC Milan subsidiary Milan Entertainment S.à r.l, Redblack Board Members Giovanni Caslini, Daniela Italia, and Jean-Marc McLean, AC Milan Director Alfredo Craca, former Rossoneri Board Member Alfred Izak Gosling, and current Rossoneri Board Members Christos Stavrou, Aiden Aspelding, Elliott Greenberg, and Victor Shuh. Ex. 4 at 2–3.

   No allegation of fraud, misstatement, or misconduct of any kind is alleged against RedBird or any of its affiliates, including Coöp, in the SPA Annulment Action. In the SPA Annulment Action, Blue Skye alleges that EA UK concealed the details of the Transaction from it and that EA UK-related parties made false statements to Blue Skye related to the Transaction. Ex. 4 at 8–9. As a Merits Action, the SPA Annulment Action will take two to three years to

come to conclusion in the Luxembourg court and involves no request for urgent relief. Thieltgen Decl. ¶¶ 9, 21.[5]

Blue Skye further alleges that the defendants took certain actions in violation of the Articles of Association. Ex. 4 at 12–16. Blue Skye seeks a declaration that the contracts relating to the Transaction are "null and void," and monetary damages as an alternative remedy against multiple defendants, not including Coöp. Ex. 4 at 29.

## IV.    The Section 1782 Proceeding

On June 24, Blue Skye filed its Section 1782 application *ex parte*. Dkt. 1. The application was granted on July 5. Dkt. 10.

The petition sought leave to serve two subpoenas—one on EMC and one on RedBird. The subpoena to RedBird contained four requests, seeking:

- All communications with another entity or person regarding discussions, negotiations, and/or consideration of a potential, pending or actual acquisition or sale of AC Milan.

- All documents, including but not limited to term sheets, letters of intent, memoranda of understanding, exclusivity agreements, non-disclosure agreements, agreements to sell or acquire AC Milan, and drafts thereof in connection with discussions, negotiations, and/or consideration of a potential, pending or actual acquisition or sale of AC Milan.

---

[5]    In addition to the actions brought by Blue Skye, the removed manager Giovanni Caslini—a Blue Skye principal—has also brought two actions in Luxembourg challenging his removal from the Board of Rossoneri, and the Board's subsequent decisions. Neither RedBird nor any related entity is a party to these actions, Caslini is not a petitioner in this Section 1782 Application and these actions are not relied on as a basis for the discovery sought. Dkt. 2.

- All of Your internal communications, memoranda, notes, and other documents regarding discussions, negotiations, and/or consideration of a contemplated, potential, pending acquisition or sale of AC Milan.

- All of Your internal communications, memoranda, notes, and other documents regarding the effect that a potential, pending or actual acquisition or sale of AC Milan could have on Rossoneri Sport, Project Redblack, Blue Skye or the TPEC Creditors.

Dkt. 1 at 21.  The subpoena thus seeks any and all external and internal communications and documents RedBird has regarding the acquisition of AC Milan without regard to privilege, or confidentiality, including drafts, proprietary communications with investors, and communications with RedBird's outside counsel and tax professionals.  In short, it seeks every electronic document, communication, and scrap of paper related to the Transaction without regard to the contents of those documents—only the last request reflects any topical limitation at all.

Respondent RedBird now moves to quash the subpoena.

## ARGUMENT

On a motion to quash a subpoena issued pursuant to Section 1782, the Respondent may make any argument available under the Federal Rules and Section 1782.  *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 675–76 (2d Cir. 2022).  Section 1782 contains three statutory requirements:  that the subpoena be directed to (1) a person residing or found in the district; (2) that the discovery sought be "for use" in a proceeding in a foreign tribunal; and (3) that the application be made by the foreign tribunal or any interested person.  As set forth in greater detail below, Blue Skye's subpoena fails the second factor.

Even if all statutory factors are met, however, a court may, in its discretion, quash a subpoena granted pursuant to Section 1782.  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court set forth four factors for courts to apply in determining whether Section 1782 discovery is appropriate:  (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and the character of the proceeding underway abroad; (3) whether the foreign court is receptive to U.S. federal court assistance; (3) whether the application is intended to circumvent foreign proof-gathering restrictions or policies; and (4) whether the discovery sought is unduly intrusive or burdensome.  Here, the third and fourth factors both favor quashing the subpoena.

RedBird also moves to quash the subpoena pursuant to Fed. R. Civ P. 45(d)(3), which requires that a court "quash or modify a subpoena" that requires the disclosure of privileged or other protected matter or which subjects the recipient to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). The party issuing the subpoena bears the initial burden of proving the discovery is relevant and proportional to the needs of the case.  *Citizens Union v. Att'y Gen.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).  Blue Skye has not met that burden here.

## I.     Blue Skye Does Not Seek Discovery "For Use" in the Luxembourg Actions But Rather to Disrupt the Transaction.

Section 1782 requires that the discovery sought be "for use" in a foreign tribunal.  28 U.S.C. § 1782(a).  Blue Skye's four requests essentially seek any and all documents and communications related to RedBird's acquisition of AC Milan.  But Blue Skye has not—and cannot—show how these documents will help it establish any of its claims in the Luxembourg Actions, which relate to its contracts and communications with EA UK, Project Redblack and Rossoneri, *not* RedBird.  The Declaratory Action hinges entirely on the interpretation of a single

11

provision of the Redblack Articles of Association—a document entirely unrelated to RedBird, and of which RedBird has no direct knowledge.  Dkt. 4-1 at 8.

Similarly, the SPA Annulment Action alleges that EA UK obfuscated the negotiations from Blue Skye in violation of the "rules of governance" it alleges required EA UK to "communicat[e to Blue Skye] all the data relating to the current sale process."  Ex. 4 at 9. Whatever the source of these "rules," RedBird is not bound by them, and is not the subject of the Action.  *See*, *e.g.*, Ex. 4 at 10.  The documents sought here are entirely irrelevant to the claims asserted in the Luxembourg Actions, and "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015).

Blue Skye's true purpose in seeking this discovery is apparent from its tactics.  When Respondents sought to negotiate a briefing schedule for motions to quash following the service of the *ex parte* subpoenas, Blue Skye's counsel demanded as a condition that "your clients guarantee in writing that the reported AC Milan transaction will not close before the motions are decided."  Ex. 8.  Blue Skye dropped this demand when confronted with its lack of authority to make it, but then demanded, despite the vast overbreadth of its subpoenas, that Respondents produce all responsive documents "within 24 hours" of this Court's ruling on the motions to quash.  Ex. 9 at 1.  Though Blue Skye claims urgency in its application, claiming it "will be severely prejudiced if discovery does not proceed expeditiously," Dkt. 2 at 18; *see also id*. at 1, this claim cannot be squared with the procedural rules governing the Luxembourg Actions. Thieltgen Decl. ¶ 9.  Under applicable Luxembourg law, the Luxembourg Actions will take years to resolve.  *Id*. ¶¶ 9, 15.  Unlike the law in the U.S., the availability of expedited relief in Luxembourg depends upon the kind of action brought, not the type of motion practice in which a

party engages.  *See id*. ¶¶ 5–9.  Blue Skye could have filed a Unilateral Action or an Urgent

Summary Proceeding, either of which would have resulted in speedier resolution, but it did not

do so.  *Id*. ¶ 22.  As "[e]mergency relief cannot be given in a Merits Proceeding," a party seeking

such relief "would not file a Merits Proceeding."  *Id*.

By demanding that RedBird effectively agree to enjoin the Transaction (relief it has not

even sought before the Luxembourg court) as a condition of a briefing schedule, and then by

using the Section 1782 to seek immediate production of *every* document remotely relating to the

Transaction even though its claims in Luxembourg are far more circumscribed, Blue Skye does

not appear to have filed this Section 1782 proceeding to obtain discovery to help prove its claims

in Luxembourg at all.  It appears to have brought it to interfere with the closing of the

Transaction by increasing the costs for both RedBird and EMC in order to get better exit terms

for itself than what it what otherwise be entitled to under its pro rata share.  While a district court

is free to "grant or deny [a § 1782] application in its discretion"—or to quash a subpoena issued

pursuant to Section 1782—"if a § 1782 application is made in bad faith, for the purpose of

harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny

the application in toto."  *Mees v. Buiter*, 793 F.3d 291, 301, 302 n.18 (2d Cir. 2015); *Euromepa*

*S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).  This is such a case.

*In re Pinchuk* is instructive here.  *See* 2014 WL 1328484 (S.D. Fl. Mar. 31, 2014).

There, a party to a lawsuit in Cyprus brought a Section 1782 application in the Southern District

of Florida seeking discovery for use in the Cyprus litigation.  *Id*. at *1.  The respondents raised

several challenges, including that the underlying Cyprus litigation was brought in violation of the

parties' shareholder agreement, which mandated arbitration.  *Id*.  According to the respondents,

the arbitral entity specified in the shareholder agreement was governed by discovery rules that

would be violated by the discovery sought in the petition. *Id*. The court stayed the application, concluding that, if respondents were correct about the shareholder agreement, then the "1782 Application undermine[d] the bargained-for cost and privacy benefits contained in the shareholder agreement." *Id*. at *4.[6] Allowing the discovery Blue Skye seeks would similarly undermine the contractual bargains Blue Skye made with EA UK and other parties to the Luxembourg cases. If those contracts do not in fact entitle Blue Skye to the disclosure it seeks here, as EMC contends, then this application is an impermissible attempt to expand Blue Skye's rights as a minority shareholder.

Because both the underlying suits and this application appear to have been brought for the purpose of forcing a better deal price than because of the truth of any allegation—and indeed, it would not be a stretch to argue that the Luxembourg Actions were filed in order to provide a basis for this Section 1782 action, and not the other way around—this Court should quash the subpoena to RedBird in the interests of justice. *See Euromepa*, 51 F.3d at 1101 & n.6; *see also Mees*, 793 F.3d at 302 n.18.

## II.  Blue Skye Seeks to Circumvent Luxembourg's Discovery Mechanisms.

Discovery pursuant to Section 1782 is improper and may be denied if it fails the third *Intel* factor, that is, if it represents an attempt to circumvent foreign proof-gathering restrictions. *Intel Corp.*, 542 U.S. at 265. Such is the case here.

The Luxembourg legal system provides specific mechanisms for obtaining documents in the various types of legal proceedings it permits. Thieltgen Decl. ¶ 12. In a Merits Proceeding, such as both of the actions brought by Blue Skye, a party must make a written request for

---

[6]  Although the court in *Pinchuk* was asked to stay the discovery application rather than quash a subpoena, the court's reasoning in that matter applies equally here. *Pinchuk*, 2014 WL 1328484 at *4, 6.

documents to the District Court through a Writ of Conclusion. *Id.* ¶ 16. Writs of Conclusion may be filed at any time during the Investigation stage of the litigation, and may be used to obtain documents from both parties and third parties. *Id.* ¶ 16.[7]

Accordingly, if Blue Skye seeks documents pertaining to Project Redblack's decision to waive Rossoneri's pledge, it can ask the Luxembourg District Court to order Project Redblack—a party to the Luxembourg litigation—to produce those documents. It could also ask the Luxembourg Court to order those documents be produced by members of the Board of Project Redblack, who are parties to the Luxembourg Actions. If Blue Skye seeks documents pertaining to the negotiation of the sale of AC Milan, it can seek those documents from EA UK or Rossoneri—also defendants in the Luxembourg Actions.

But Blue Skye has not done so. Blue Skye has made no requests for document production in the Luxembourg Actions, even though procedural mechanisms exist for it to have done so. *Id.* ¶ 22. Instead, it came straight to this Court to seek discovery. This decision counsels against allowing Blue Skye the discovery it seeks. "While there is no 'exhaustion' requirement for seeking discovery under § 1782, the District Court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008); *accord In re IPC Do Nordeste, Ltda*, 2012 WL 4448886, at *9 (E.D. Mich. Sept. 25, 2012) ("[Section] 1782 applicant's conduct in the foreign forum is not irrelevant"). Blue Skye's failure to seek these documents in Luxembourg is a tactical decision and this Section 1782 petition is intended to harass RedBird and disrupt the Transaction.

---

[7] Despite Blue Skye's assertions to the contrary, whether those documents are held extraterritorially is of no moment, as Luxembourg law places no geographical limits on a court's ability to order document production from a party. *Compare* Dkt. 2 at 1 *with* Thieltgen Decl. ¶ 23.

But Blue Skye also appears to be attempting to circumvent the stricter discovery requirements of Luxembourg law, which would require Blue Skye to do precisely the opposite of what it has done here by seeking every document in RedBird's (and EMC's) possession regarding the Transaction.  Under Luxembourg law, Blue Skye would have to (1) set out precisely which documents it seeks, (2) prove with sufficient means that the documents exist, (3) prove with sufficient means that the documents are in the possession of the adverse party, and (4) demonstrate how the documents will help the court decide the case.  Thieltgen Decl. ¶ 24.

In other words, if Blue Skye were to make the vague and all-encompassing requests in Luxembourg that it has made here, they would likely be denied.  *Id.* ("Were the application filed in Luxembourg, which is entirely possible, it would however be denied.").  As this Court has previously held, if "the production of [requested] documents is inappropriate under the [foreign jurisdiction's] rules," then "enforcement of [petitioner's] subpoenas would constitute a clear circumvention of the [foreign jurisdiction's] procedures which the Supreme Court expressly prohibited in *Intel*."  *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006).  The sober and careful rules of document discovery under Luxembourg law would prevent the very kind of harassment that Blue Skye seeks to achieve using Section 1782, and Blue Skye's failure to even attempt to obtain discovery through the Luxembourg Actions underscores its true intent.  Because Blue Skye's use of Section 1782 "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," its subpoena to RedBird should be quashed.  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) (*citing Intel Corp.*, 542 U.S. at 265).

### III.   The Subpoena Should Be Quashed Because It Is Overly Broad and Unduly Burdensome and Seeks Privileged Communications.

Section 1782(a) specifies that it may not be used to obtain testimony or documents "in violation of any legally applicable privilege."  It further provides that the discovery be taken "in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).  Under the Federal Rules, discovery requests are proper only if (1) the documents they seek are non-privileged, and (2) they "appear[] reasonably calculated to lead to the discovery of admissible evidence."  *See Application of Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *4 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 26(b)(1)); *see also In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("Section 1782(a) mandates that discovery under the statute be produced in accordance with the Federal Rules of Civil Procedure.").  Blue Skye's discovery requests fail both of these basic tests.

In order to reach a mutually agreeable solution to the overbreadth of these documents, RedBird requested that Blue Skye consider narrowing its requests in a meet and confer.  The answer from Blue Skye?  A categorical no.  When asked whether they would agree to exempt particular categories of documents, *e.g.* communications with in house and outside counsel, from search, review, and privilege logging obligations, or otherwise narrow the requests to carve out privileged documents, Blue Skye's counsel declined.  Champion Decl. ¶ 13.  In fact, Blue Skye has been unwilling to limit the scope of the subpoena in any way—effectively asking for every scrap of paper associated with the Transaction, and demonstrating the central point that the ultimate goal of Blue Skye is not relevant discovery, but the imposition of burden.

#### A.   The Subpoena Is Inappropriately Broad and Unduly Burdensome.

The Subpoena should be quashed because it is vastly overbroad.  The Federal Rules prohibit discovery that imposes "undue burden or expense."  Fed. R. Civ. P. 45(c)(1); *see also* 28

17

U.S.C. § 1782(a) (stating that discovery ordered must be "in accordance with the Federal Rules of Civil Procedure"). "Whether a subpoena imposes . . . an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described and the burden imposed.'" *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citation omitted); *see also Rattray v. City of New York*, 2021 WL 5810903, at *2 (S.D.N.Y. Dec. 6, 2021).[8] "In general, burden and expense are to be weighted more heavily when discovery is sought from non-parties." *Lynch v. City of New York*, 2021 WL 4652305, at *2 (S.D.N.Y. Oct. 5, 2021).

Blue Skye claims in its application that "the discovery sought is not unduly intrusive or burdensome." Dkt. 2 at 16. This boilerplate defense could not be further from the truth. Indeed, Blue Skye's subpoena amounts to a request for every scrap of paper and communication in any way related to the Transaction. Specifically, Blue Skye demands:

- All communications with another entity or person regarding discussions, negotiations, and/or consideration of a potential, pending or actual acquisition or sale of AC Milan.

- All documents, including but not limited to term sheets, letters of intent, memoranda of understanding, exclusivity agreements, non-disclosure agreements, agreements to sell or acquire AC Milan, and drafts thereof in connection with discussions, negotiations, and/or consideration of a potential, pending or actual acquisition or sale of AC Milan.

---

[8]   Although the court in *Concord Boat Corp.* was assessing the propriety of a subpoena issued in a U.S. litigation, the standards applied in this case (and others like it) are instructive here. *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) (providing that a court may assess a motion to quash a § 1782 application under the rules for discovery prescribed in the Federal Rules of Civil Procedure).

- All of Your internal communications, memoranda, notes, and other documents regarding discussions, negotiations, and/or consideration of a contemplated, potential, pending acquisition or sale of AC Milan.

- All of Your internal communications, memoranda, notes, and other documents regarding the effect that a potential, pending or actual acquisition or sale of AC Milan could have on Rossoneri Sport, Project Redblack, Blue Skye or the TPEC Creditors.

Blue Skye's requests "fail to state the nature of the documents plaintiffs seek with reasonable particularity," as required. *See Concord Boat Corp.*, 169 F.R.D. at 51. As this court has previously found, "[s]uch a fishing expedition will reel in 'material with little apparent or likely relevance to the subject matter' at hand, . . . [and thus] it comports with neither the letter nor the spirit of the federal civil discovery rules." *Id*; *see also Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017) (denying motion to compel where subpoena was unduly burdensome including because it sought documents unrelated to the specific transactions at issue "but rather relate[d] to . . . investments in general"). Only the fourth of Blue Skye's requests even attempts to focus on documents that might actually pertain to the topics at issue in the Luxembourg litigations, but even that request is overbroad given the narrow allegations in the Luxembourg cases and the fact that the entities identified in that request are part of the ownership structure of AC Milan and thus will likely be named in thousands of documents. When counsel for RedBird told counsel for Blue Skye that it could see "no daylight" between Blue Skye's requests and every document and communication related to the Transaction in any way, counsel for Blue Skye did not

disagree.  Champion Decl. ¶ 13.  And when asked whether it was willing to narrow its requests, counsel for Blue Skye declined.  *Id.*

The Luxembourg Actions revolve around a narrow set of questions pertaining to the interpretation of contracts to which RedBird is not a party.  RedBird is a bystander to Blue Skye's claims.  Here are two key examples of how entire categories of the subpoenaed documents—which Blue Skye has refused to revise or limit any in way—have no relevance to the claims at issue:

- RedBird's internal notes and communications about the negotiations are irrelevant to Blue Skye's claims, as they have nothing to do with (1) whether the Transaction or the process leading to it violated Project Redblack's Articles of Association, (2) whether a different buyer would have offered more money, or (3) whether Caslini was improperly removed from the Board of Directors.  Ex. 4 at 10–15.  RedBird has no relevant knowledge pertaining to other offers or potential transactions the sellers might have contemplated.

- RedBird's communications with its potential investors and funding sources are irrelevant to Blue Skye's claims, as they have nothing to do with (1) whether the Transaction or the process leading to it somehow violated Project Redblack's Articles of Association, (2) whether a different buyer would have offered more money, or (3) whether Caslini was improperly removed from the Board of Directors.  Ex. 4 at 10–15; *see Blackrock*, 2017 WL 9401102, at *2 ("Given the marginal relevance of the information sought, and the fact that [the propounding party] can obtain meaningful relief from the parties themselves, the Court declines to impose the risk of disclosure of [third party's] commercially sensitive

20

competitive information.").  In addition, to the extent RedBird had

communications with third parties regarding the Transaction, they are privileged

or constitute confidential investor communications protected by non-disclosure

agreements whose disclosure to Blue Skye would cause competitive harm to

RedBird.  *See* Klein Decl. ¶ 8.

Despite their irrelevance, these kinds of communications make up the lion's share of the

requested documents.  Thus, while Blue Skye's subpoena seeks largely irrelevant documents, the

burden of collecting, searching, reviewing, and where necessary, logging, responsive documents

would be significant.  Moreover, because the "volume of potentially responsive documents and

the high-ranking status of the managers and employees who will be required to spend substantial

time in helping to collect these documents, . . . completing this task will result in a substantial

diversion of resources."  *Id.* at 51.  Moreover, Blue Skye's subpoena purports to impose

"ongoing" duties, meaning that RedBird would likely have to repeat the entire document

collection, searching, and review process again once the Transaction closes.  Dkt. 1-2 at 3

(Instruction 2).

RedBird estimates that it would have to collect documents from 15 custodians to respond

to Blue Skye's requests.  Klein Decl. ¶ 9; *see also* Champion Decl. ¶ 14.  While these estimates

are preliminary, the volume of documents to be searched and reviewed could be approximately

1509 GB of data.  Champion Decl. ¶ 14; *see also* Ex. 10.  RedBird has obtained a preliminary

cost estimate for the review, which would be at least $1,728,462.  Champion Decl. ¶ 14; *see also*

Ex. 10.

"Should a court find that a subpoena is unduly burdensome," as is this one, "it must

quash or modify that subpoena."  *Application of Auto-Guadeloupe*, 2012 WL 4841945, at *5

21

(citing Fed. R. Civ. P 45(c)(3)(A)(iv) and Fed R. Civ. P. 26(b)(2)(C)); *see also Intel*, 542 U.S. at

265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed.").  And because

Blue Skye's Section 1782 application "unreasonably seeks . . . irrelevant materials, the court is

free to deny the application in toto."  *Mees*, 793 F.3d at 302 n.18.  It should do so.

### B.     The Subpoena Sweeps in Privileged Documents

As set forth above, Blue Skye's subpoena seeks every document and communication in

RedBird's possession regarding the proposed acquisition of AC Milan, including draft

agreements, term sheets, and privileged attorney client communications.  The requests make no

attempt to carve out privileged documents or work product and therefore would sweep in a vast

number of privileged communications with RedBird's in house and outside counsel.  Champion

Decl. ¶ 13. Because the subpoena sweeps in work product and privileged communications, the

subpoena would impose massive, undue document review and privilege logging burdens on

RedBird.  It should therefore be quashed.  *See Estate of Ungar v. Palestinian Auth.*, 400 F. Supp.

2d 541, 554 (S.D.N.Y. 2005) (quashing subpoena in part due to "the existence of attorney-client

privilege for all documents").

### IV.    If the Subpoena Is Allowed, Costs Should Be Shifted

Should this Court deny RedBird's motion to quash, it should nevertheless order Blue

Skye to bear the costs and fees associated with RedBird's compliance with the subpoena.  The

Southern District has held that Rule 45 "make[s] cost shifting *mandatory* in all instances in

which a non-party incurs significant expense from compliance with a subpoena."  *Koopmann,*

*LLC*, 2018 WL 9917679, at *1 (emphasis added) (internal quotation mark omitted); Fed. R. Civ.

P. 45(d)(2)(B)(ii); *see also In re Vale S.A.,* 2021 WL 311236, at *2 (S.D.N.Y. Jan. 29, 2021)

(applying FRCP 45(d)(1) in the § 1781 context).  Such cost-shifting is certainly warranted here

given the incredible burden RedBird will face if ordered to satisfy Blue Skye's sweeping

subpoena requests.  Courts determining the proper allocation of costs should consider three factors: "(1) whether the party has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation [is] of public importance." *In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020).  All three factors weigh in favor of cost-shifting to Blue Skye.

*First*, RedBird has no *legal* interest in the outcome of the underlying Luxembourg Actions because its conduct is not at issue there and it was not "involved in the underlying conduct giving rise to the litigation." *Nike, Inc. v. Wu*, 2020 WL 257475, at *14 (S.D.N.Y. Jan. 17, 2020).  The Luxembourg Actions are centrally focused on the alleged breaches of contract between Blue Skye, Project Redblack, EA UK and its related entities, and Rossoneri.  RedBird is not a party to any of these contracts and it is not named as a defendant to any of the related proceedings.  *See supra* Section III.  RedBird has entered into a separate agreement with the sellers; the sellers alone are responsible for ensuring that it complies with its own contractual obligations in the course of this acquisition.  *See* Klein Decl. ¶ 5.  "[T]here is no allegation" that RedBird was "involved with, or even aware of" the sellers' alleged breaches of contract, so this factor favors RedBird.  *See Nike*, .2020 WL 257475, at *14.

*Second*, RedBird is not better situated than Blue Skye to absorb the costs related to its compliance with Blue Skye's subpoena.  Blue Skye served RedBird with four subpoena requests that arguably cover every single scrap of paper in RedBird's possession associated with the AC Milan acquisition, and has refused to limit the breadth of these requests in any way.  *See* Champion Decl. ¶ 13.  The AC Milan acquisition is among the largest deals that RedBird has worked on; at least 10 RedBird employees are primarily staffed on this matter, as well as additional investment professionals and the entire RedBird capital partnership team.  *See* Klein

Decl. ¶ 7.  There are at least 15 custodians from whom documents would need to be collected and tens of thousands of documents that would be responsive to Blue Skye's overbroad requests. *See id*.  Blue Skye's subpoena requests are "broad, and complying with [its] subpoena would impose a burden" on RedBird, yet there is no indication that "the materials requested by the subpoena are relevant to this complex dispute." *In re Novartis*, 2020 WL 3317203, at *6 (finding that cost-shifting was appropriate where the burden on respondent was high even though the documents were "at the core of Plaintiffs' case").   That RedBird may be financially capable of paying the costs associated with this broad document review effort is of no moment.  It would be inequitable to require RedBird alone to shoulder the costs for the unbounded and likely irrelevant discovery Blue Skye is demanding in service of its foreign contract disputes.

*Third*, the Luxembourg Actions are of no public consequence whatsoever.  The equities "favor[] cost-shifting where 'litigation involves a purely private dispute.'" *Nike*, 2020 WL 257475, at *14.  The Luxembourg Actions were brought by a private party seeking to vindicate its dubious financial rights over the purchase of a private soccer club.  To the extent there is any real public interest in the purchase of AC Milan, "the public's interest in a third party's subpoena compliance is substantially less" than its interest in the purchase itself.  *Id*.

At base, this analysis is a question of fairness.  RedBird is faced with an enormous burden in spite of its repeated assertion that it has no documents related to the claims brought in the Luxembourg Actions. It has asked Blue Skye to narrow its requests to no avail.  Champion Decl. ¶ 13.  "Where, as here, the parties dispute the value of the discovery sought and the burden of production, 'the prudent course is to allocate the costs of discovery in a manner that place the incentive on the parties to focus the production and minimize costs.'" *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019) (ordering that party issuing

subpoenas "shall bear all customary search, collection, and production costs associated with . . . compliance with the Subpoena"). The equities demand that Blue Skye be obligated to bear the costs associated with its subpoena requests to RedBird.

In anticipation of the cost and time necessary to produce the scope of documents requested, a document vendor has provided a preliminary cost estimate of approximately $1.7 million for compliance based upon (1) the number of documents that fall within the subpoena, (2) the number of relevant document custodians at RedBird, (3) the number of emails held by the custodians, and (4) the amount of vendor review time necessary produce those documents and review for privilege. Champion Decl. ¶ 14. If the Court denies RedBird's motion to quash, we respectfully request that the Court order Blue Skye to pay the amount set forth in the Epiq cost estimate in order to pay for the subpoena compliance, and retain jurisdiction over this matter so that if the costs eventually exceed that estimate, necessary adjustments can be ordered.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully requests that the Court grant this motion to quash.

Dated:   July 22, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Anne Champion*

Anne Champion
Maurice Suh (*pro hac vice forthcoming*)
Cate McCaffrey
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-3883
Facsimile:  (212) 351-5303

*Counsel for Respondent RedBird Capital Partners*