# Exhibit G

## SUMMONS BEFORE THE DISTRICT COURT OF AND IN LUXEMBOURG, SITTING IN COMMERCIAL MATTERS ACCORDING TO THE CIVIL PROCEDURE

The year two thousand and twenty-two, on 13/06/2022

AT THE REQUEST OF :

1. **Blue Skye Financial Partners S.à r.l.,** a limited liability company established and having its registered office at 5, Côte d'Eich, L-1450 Luxembourg, registered with the Luxembourg Trade and Companies Register under number B 193.016, represented by its management board in office,

(hereinafter "**Blue Skye**")

2. The **Luxembourg Investment Company 159 S.à r.l.,** a limited liability company established and having its registered office at 5, Côte d'Eich, L-1450 Luxembourg, registered with the Luxembourg Trade and Companies Register under number B 210.208, represented by its management board in office

(hereinafter the "**TPECs Creditor**")

(hereinafter referred to as the "**Claimants**" or the "**Claiming Parties**"),

for which **BONN STEICHEN & PARTNERS**, a limited partnership, established and having its registered office in L-2370 Howald, 2, rue Peternelchen, Immeuble C2, registered in the Luxembourg Trade and Companies Register under number B211933, registered in list V of the Luxembourg Bar Association, represented by its manager currently in office, namely the limited liability company BSP S.à r.l., established and having its registered office at L-2370 Howald, 2, rue Peternelchen, Immeuble C2, registered in the Luxembourg Trade and Companies Register under number B211880, itself represented for the purposes of the present proceedings by **Mr Fabio TREVISAN**, Avocat à la Cour, (box no. 9), at whose office an address for service is elected,

I, the undersigned Guy ENGEL, bailiff, residing at L-2263 Luxembourg, 2, rue Guido Oppenheim, registered with the District Court of and in Luxembourg,

### GAVE A SUMMONS TO

1. **Mrs Daniela ITALIA,** company manager, professionally domiciled at 6, rue Eugène Ruppert, L-2453 Luxembourg;

2. **Mr Jean-Marc MCLEAN,** company manager, professionally domiciled at 12C, rue Guillaume Kroll, L-1882 Luxembourg;

   (the sub 1) and sub 2) assignees hereinafter together referred to as the "**Class A Managers**")

3. **Mr Giovanni CASLINI,** company manager, professionally domiciled at 5, Côte d'Eich, L-1450 Luxembourg;

4. **PROJECT REDBLACK S.à r.l.,** a limited liability company established and having its registered office at 42-44, avenue de la Gare, L-1610 Luxembourg, registered in the Luxembourg Trade and Companies Register under number B. 213.015, represented by its management board in office, (hereinafter "**Project Redblack**");

5. **GENIO INVESTMENTS LLC,** a company incorporated under the laws of the United States of America, having its registered office at 1209 Orange Street, Corporation Trust Center,

       19801 Wilmington, United States of America, registered with the *Division of Corporations of the Secretary of the State of Delaware* under number 6368216, represented by its management body in office ;

6.   **KING GEORGE INVESTMENTS LLC**, **a** company incorporated under the laws of the United States of America, having its registered office at 1209 Orange Street, Corporation Trust Center, 19801 Wilmington, United States of America, registered with the *Division of Corporations of the Secretary of the State of Delaware* under number 6368212, represented by its management body in office ;

7.   the limited liability company **ROSSONERI SPORT INVESTMENT LUXEMBOURG S.à r.l.**, established and having its registered office at 12C, Rue Guillaume Kroll, L-1882 Luxembourg, registered in the Luxembourg Trade and Companies Register under number B. 211.625, represented by its management board in office (hereinafter "**Rossoneri Sport**");

8.   **Mr. Alfredo CRACA**, in his capacity as receiver of the pledge, professionally domiciled at Via degli Omenoni, 2, 20121 Milan, Italy;

9.   **FOOTBALLCO INTERMEDIATE COÖPERATIEF U.A**. a company established and having its registered office at Basiveg, 10, 1043AP, Amsterdam, the Netherlands, registered in the Commercial Register under number 78443962 (RSIN 861399663), represented by its management body in office ;

**TO APPEAR BEFORE THE COURT, BY LAWYER, WITHIN THE FIFTEEN DAYS LEGAL TIME LIMIT, TO WHICH ARE ADDED ANY TIME LIMITS FOR DISTANCE, AT 9.00 A.M., BEFORE THE DISTRICT COURT OF LUXEMBOURG, SECOND SECTION, SITTING IN COMMERCIAL MATTERS ACCORDING TO THE PROCEDURE APPLICABLE TO CIVIL MATTERS, CITÉ JUDICIAIRE, BÂTIMENT CO, L-2080 LUXEMBOURG, FOR THE FOLLOWING REASONS**

**WITH A DECLARATION, IN ACCORDANCE WITH ARTICLES 79, 80 AND 154 OF THE NEW CODE OF CIVIL PROCEDURE, THAT IF THE PRESENT NOTIFICATION IS MADE IN PERSON AND THE DEFENDANT DOES NOT APPEAR, THE JUDGMENT TO BE DELIVERED WILL BE DEEMED TO BE CONTRADICTORY AND NOT SUBJECT TO OPPOSITION;**

## I. THE FACTS

### A. THE STRUCTURE OF THE GROUP

The share capital of Project Redblack of EUR 12,000, represented by 12,000 shares with a nominal value of EUR 1, is distributed as follows (**Exhibits 1 and 2**):

- 3,447 Class A shares with a nominal value of EUR 1 are held by Genio Investments LLC, a company incorporated in the United States;
- 8,041 Class A shares with a nominal value of EUR 1 are held by the US company King George Investments LLC.

    These two majority class A partners are investment vehicles of the US investment group Elliott Management, which has over USD 51.5 billion in assets under management worldwide (together referred to as **"Elliott"**).

- 512 Class B shares with a nominal value of EUR 1 are held by the Luxembourg company Blue Skye.

The management board of Project Redblack is composed of:

- Ms Daniela ITALIA, Class A Manager, appointed by Elliott ;
- Mr. Jean-Marc MCLEAN, Class A Manager, appointed by Elliott; and
- Mr. Giovanni CASLINI, Class B Manager, appointed by Blue Skye.

Project Redblack is the sole shareholder of Rossoneri Sport, of which it holds all 20,000 shares (11,999 Class A shares and one Class B share) (**Exhibit 3**).

Rossoneri Sport substantially owns all of the shares of Associazione Calcio Milano S.p.A. or A.C. Milan, the internationally known Italian football club (the **"AC Milan"**), which constitutes its only asset.

The structure of the group can therefore be summarised as follows (**Exhibit 4**):



### B. THE FINANCING OF ROSSONERI SPORT'S ACQUISITION OF AC MILAN

Project Redblack financed Rossoneri Sport's acquisition of AC Milan in April 2017 by way of an *acquisition facility agreement* entered into on 13 April 2017 (the **"AFA"**) (**Exhibit 5**). Through the

AFA, Project Redblack undertook to finance Rossoneri Sport up to EUR 202,000,000 (see in this sense article 2 of the AFA).

However, Project Redblack required the provision of guarantees of its full repayment. Accordingly, a first-ranking pledge on the shares of AC Milan (the **"Pledge"**) was granted by Rossoneri Sport pursuant to an agreement dated 13 April 2017 (**Exhibit 6**), amended on 31 July 2017 (**Exhibit 7**).



In order to be able to meet its obligations resulting from the AFA, Project Redblack issued hybrid credit instruments called "*Tracking Preferred Equity Certificates*" (hereinafter the **"TPECs"**) pursuant to an agreement entered into on 10 April 2017 (**Exhibit 8**).

In accordance with the terms of this agreement, the Claimants subscribed to TPECs. Thus, the TPECs creditor, Luxembourg Investment Company 159, subscribed to 10,735,567 Class B TPECs for a total amount of EUR 10,735,567. Blue Skye has subscribed to 10 TPECs of class A-2.

Other creditors have also subscribed to Class A-1 TPECs, pursuant to this agreement, for a total amount of EUR 240,724,434.



In order to meet AC Milan's cash flow requirements, new TPECs have been issued. Thus, as of the date hereof, the total number of TPECs issued by Project Redblack amounts to 733,728,971 for a total amount of EUR 733,728,971.

Interest-free associated loans were also granted (see in this respect **Exhibit 9**).



This total amount was injected into Rossoneri Sport on the basis of the AFA as well as through the granting of loans.

- 6 -



Rossoneri Sport is therefore now liable to Project Redblack for a total amount of EUR 1,231,048,383 (**Exhibit 10**).

### C. ELLIOTT'S DELIBERATELY OBSCURE AC MILAN SALE PROCESS

On 1er June 2022, a press release appeared on AC Milan's website stating that "*RedBird Capital Partners ("RedBird") and Elliott Advisors UK Limited ("Elliott") announced today that they have reached a definitive agreement for RedBird to acquire [AC Milan]*"[1] (**Exhibit 11**)

This officialisation follows weeks of rumours (since mid-April 2022) of an imminent sale, relayed by the press, without the Claimants ever having been able to obtain any information on this sale. Even the manager appointed by Blue Skye to Project Redblack (also manager of Rossoneri Sport), Mr Giovanni Caslini, was denied access to the documentation. After insisting on obtaining the information in his capacity as manager of Rossoneri Sport, he was suddenly dismissed from his position on 17 May 2022.

Its writ of summons served on 1er June 2022 on Project Redblack and Rossoneri Sport is edifying as it highlights that (**Exhibit 12**):

- as of 17 May 2022, the date of his dismissal as manager of Rossoneri Sport, no meeting of the management board had been held to:
    - appoint counsels negotiating on behalf of Rossoneri Sport a sale of AC Milan shares;
    - appoint representatives to negotiate on behalf of Rossoneri Sport a transfer of AC Milan shares;
    - decide whether to enter into negotiations (exclusive or not) with a potential buyer;
    - organise the process of a sale of AC Milan shares (including the acquisition audit process, the terms and conditions of the transmission of confidential information, etc.);

---

[1] *RedBird Capital Partners ("RedBird") and Elliott Advisors UK Limited ("Elliott") announced today that they have entered into a definitive agreement for RedBird to acquire Associazione Calcio Milan*"

- despite his repeated requests for information, both in his capacity as manager of Rossoneri Sport and of Project Redblack and Blue Skye, Mr Giovanni Caslini has never been given any document relating to a potential transfer of AC Milan shares;

- and that, on the contrary, his insistence on being able to make an informed decision led directly to his dismissal on 17 May 2022.

Thus, the process of transferring AC Milan's shares was deliberately hidden from at least one manager (representing the Claimants) of Rossoneri Sport (AC Milan's shareholder), which demonstrates that there are clearly elements of the transfer that must be hidden from the Claimants. Indeed, less than eight working days after the dismissal of Mr Giovanni CASLINI as manager of Rossoneri Sport, the transfer of the AC Milan shares was completed, i.e. a *due-diligence* was carried out and a contract was negotiated and approved. Needless to say, such a process takes months and Blue Skye was voluntarily removed from the process, as was the manager appointed by it. This is nothing short of fraudulent.

The fact that the very existence of talks and the content of the agreement finally reached with a purchaser are hidden from the Claimants is not surprising as this assignment implies the waiver and/or release by Project Redblack of all or part of any existing debt owed by Rossoneri Sport and the pledge securing this debt.

This was implicitly confirmed by the Class A Managers (**Exhibit 13**).

This point was, in any event, acknowledged in a letter dated 2 June 2022 from Rossoneri Sport to, among others, Blue Skye and Project Redblack (**Exhibit 14**).

Indeed, one of the conditions precedent that must be met is the release of the pledge. By waiving its pledge, Project Redblack waives any guarantee of repayment of the financing granted. Thus, from the moment it waives its pledge, Project Redblack no longer has any certainty that it will receive any reimbursement from Rossoneri Sport, even though it has its own creditors to repay.

In this respect, although the envisaged sale price is estimated at EUR 1,228,418,010.20, not all of this amount will be paid. Indeed, (i) only EUR 1,150,000,000 can be remitted to Rossoneri Sport, the difference corresponding to the net financial debt of AC Milan and (ii) Rossoneri Sport has, in any event, undertaken to grant a seller's loan (loan from the seller to the buyer) of a minimum amount of **EUR 200,000,000 and a maximum of EUR 550,000,000** (plus an additional amount of EUR 60,000,000 to cover AC Milan's own funds until June 2025) (**Exhibit 14** - Appendix C).

If, in the best case, the amount received by Rossoneri Sport from the sale of the AC Milan shares is transferred to Project Redblack, only an amount of between EUR 600,000,000 and EUR 950,000,000 will be repaid.

As a result, up to **half of Rossoneri Sport's debt to** Project Redblack may never be repaid. This is especially true as Project Redblack will no longer have any guarantee that it will be repaid.

Moreover, the contract for the sale of the AC Milan shares, concluded between a Luxembourg company and a Dutch company, was subject to American law and to American jurisdictions, for unexplained reasons. In the event of a default by the buyer, it is therefore perfectly illusory that Rossoneri Sport will be able to repay Project Redblack the amount of its debt when it will no longer have any assets.

In addition, the transfer price is in any case insufficient to meet the amount owed by Rossoneri Sport to Project Redblack, namely EUR 1,231,048,383.

Thus, in addition to the risk incurred by the waiver of the pledge, the assignment of the AC Milan shares requires a waiver by Project Redblack of part of its claim, without consideration, and with a deterioration of its collateral position.

Case 1:22-mc-00171-KPF   Document 30-7   Filed 06/22/22   Page 9 of 17

- 8 -

D. **THE EMERGENCE OF THE DISPUTE CONCERNING THE CONDITIONS UNDER WHICH WAIVERS CAN BE GRANTED**

1. **THE NEED FOR UNANIMITY TO GRANT WAIVERS**

As soon as Blue Skye became aware of the rumours of a possible sale of AC Milan shares, it wrote to the receiver of the pledge through their Italian counsel, DLA Piper (**Exhibits 15 and 16**).

In this letter, Blue Skye pointed out that the articles of association of Project Redblack provide in their article 13 for certain so-called "Special" (or reserved) matters that the unanimity of the management board is required to approve any resolutions relating to them.

Indeed, Article 13 of Project Redblack's statutes states in part that:

> *The unanimous agreement of all Managers is required for decisions on the following matters ("**Special Matters**"):*
>
> ➢ *The creation or granting of any pledge, security interest, charge or mortgage on any of the Company's assets or property, and the decision to extend them;*
> ➢ *The issue by the Company of any securities, bonds, debt securities, and other instruments or any modification of the rights and obligations relating to such securities, bonds, debt securities, and other instruments;*
> ➢ *The incurring of loans or any other form of indebtedness other than reasonable charges for professional, institutional, administrative or accounting expenses properly incurred by the Company;*
> ➢ *Any change to the terms of the tracking preferred equity certificates (TPECs) of any class issued by the Company;*
> ➢ *Any transaction between the Company and any of its Associates or TPEC holders or any subsidiary of, or affiliate of, such Associate or TPEC holder. For the avoidance of doubt, payments under or redemptions of TPECs by the Company do not constitute Special Materials;*
> ➢ *The conclusion by the Company of any consultancy, management or other service contract for undue amounts per contract exceeding EUR 20,000 per annum.*
>
> *If the Managers are unable to reach unanimous consent in relation to the Special Matters set out above, the relevant decision shall be referred to the Members for deliberation.*

In view of the content of this article, unanimity is required for the following reasons in particular:

- First, under the paragraph providing that "*Any transaction between the Company and any of its Associates or TPEC holders or any subsidiary of, or affiliate of, such Associate or TPEC holder*".

  In the present case, the release of the pledge between Project Redblack and Rossoneri Sport and the waiver of part of the debt is indeed a transaction between Project Redblack and Rossoneri Sport, which indisputably falls into this category, and should therefore be submitted to the Management Board of Project Redblack.

- Secondly, under the paragraph providing that "*The creation or granting of any pledge, security interest, charge or mortgage on any of the assets or property of the Company, as well as the decision to extend them*.

  The partners of Project Redblack have therefore taken steps to ensure that no encumbrance can be placed on the company without the unanimous agreement of the managers appointed by them, if not their unanimous agreement.

> Under the unwritten rule of parallelism, termination of the pledge, where the termination is not the result of a stipulation in the pledge agreement, should also require the unanimous consent of Project RedBlack's management board.
>
> Indeed, by waiving the pledge on an essential asset of the company (its claim on Rossoneri Sport which exceeds one billion euros), the burden on the company increases as it will not be able to recover its claim. This is clearly the counterpart of the granting of the pledge: the same procedure must be followed for the release of the same pledge.

Thus, the Requesting Parties, as well as the managing director Mr. Giovanni CASLINI, are of the opinion that waivers can only be granted following a unanimous decision of the management board of Project Redblack. Any other conclusion would result in a violation of the company's statutes.

### 2. FOR CLASS A MANAGERS, WAIVERS CAN BE MADE BY THEIR SIGNATURES ALONE, AND DO NOT REQUIRE UNANIMITY

In response to this letter, the Class A Managers wrote a letter on behalf of Project Redblack, without having previously consulted the Management Board, challenging the application of this unanimity requirement to pass such a resolution authorising waivers (**Exhibit 13** - see also in this respect **Exhibit 17**).

According to them:

- Article 13 of Project Redblack's articles of association would simply not apply. While no explanation is given in their initial letter, a letter from the Class A Board of Managers dated 6 May 2022 (**Exhibit 16**) alleges that this article only referred to transactions between Project Redblack and its associates, but not to Project Redblack and its subsidiaries, and that in any event it would be inapplicable to Rossoneri Sport as the latter was only acquired after the introduction of this provision.

    This position is simply not tenable and remains a mere allegation: thus, if a provision of the articles of association is passed before the acquisition of an asset or the entry of a new partner, it would not be applicable to him... This is simply irrelevant, since the articles of association reflect the will of the partners, if they do not modify them, they remain applicable!

- the terms and conditions of the TPECs would apply, according to them, and would make it possible to derogate from the statutes. However, TPECs are debt instruments, which could be compared for the purposes of this paper to bonds, which cannot interfere with the statutory rights and obligations of a partner, unless the very nature of TPECs, which do not grant voting rights, like shares, but only a claim, is distorted.

Thus, under the Class A Managers' theory, the signatures of two managers would be sufficient to bind Project Redblack to a waiver that would drain it of all assets. Since these managers were appointed by Elliott, it is undisputed that Elliott shares the same position and benefits directly from this waiver without any consideration for Project Redblack in the sense that its claims cannot be repaid in full.

It should be added that if the Class A managers were to decide to submit waivers to a vote of the partners, in accordance with articles 13 and 16 of the articles of association, the same problem of unanimity would then exist at the level of the general meeting of the partners of Project Redblack, of which the applicant sub 1) is a member, and which does not share this theory.

There is therefore a very clear and irreconcilable difference between the parties, members of the management board and partners of Project Redblack, on the interpretation of the provisions of the articles of association, and hence on the conditions under which waivers can be granted, namely, is unanimity required within the management board or not?

It is therefore necessary to bring this matter before the Court in order to have this dispute decided.

Case 1:22-mc-00177-KPF    Document 34-17    Filed 06/27/22    Page 11 of 17

- 10 -

## II. IN LAW

### A. Your Court is asked to declare that the waivers of the Pledge and part of the debt require a unanimous resolution of the managers of Project Redblack

A declaratory action is defined as one whose purpose is to have the existence or non-existence of a legal situation, the regularity or irregularity of an act, which is not contested, declared judicially[2].

Case law has specified that: *"to justify the exercise of a declaratory action, it is sufficient that a serious uncertainty or a serious threat paralyzes the normal exercise of a right and that, on the other hand, the judicial declaration requested is of such a nature as to offer the plaintiff not a purely theoretical satisfaction, but a concrete and determined utility"*[3].

Thus, in order to be declared admissible[4], a declaratory action must meet two cumulative conditions:

- the requirement of a serious and grave threat to a right to the extent of creating a specific disturbance
- the judicial declaration must be of such a nature as to offer the applicant a concrete and definite utility.

In this case, it will be shown below that these conditions are met.

#### 1. A serious and existing threat to the right of veto provided for in the statutes

The unanimity clause (contained in Articles 13 (for managers) and 16 (for partners)) allows a manager, if not a partner, to have a right of veto which is applicable in matters identified by the partners as being extremely important to them.

It has been shown above that the partners of Project Redblack included such a clause to cover the hypothesis currently under consideration by your court, namely an agreement between Project Redblack and Rossoneri Sport by which Project Redblack waives the Pledge and part of its claim on Rossoneri Sport.

It has also been shown that the Class A Managers, representing Elliott, have already stated that they are able to bind Project Redblack by their signatures alone.

As a result, Blue Skye, both as a partner and through the manager appointed to the management board of Project Redblack, will be deprived of its statutory right of veto.

Beyond this right of veto, it has been demonstrated above that such a transaction will have a catastrophic financial impact since the substantial financing granted to Rossoneri Sport will no longer be accompanied by any guarantee and that, in any event, the proceeds of the sale will be insufficient to repay Project Redblack's claim.

---

[2] Solus and Perrot, *Droit judiciaire privé*, ed. Sirey, 1961, tome 1, n°230, p.209.

[3] TAL Lux. commercial judgment .XV no. 833/2017 dated 5 July 2017, roll number 182329, citing Court of Appeal, 7.12.1976, Pas. 23, 477 and Court of Appeal, 22.4.1999, roll no. 21314; see also TAL Lux. civil judgment no. 19/2018 (8ème chamber) dated 16 January 2018, roll number TAL-2017-00412

[4] TAL Lux. commercial judgment .XV no. 833/2017 dated 5 July 2017, roll number 182329, and TAL Lux. commercial judgment 2018TALCH15/543 dated 25 April 2018, roll numbers 181613 + 184874 + 186633.

There is therefore a serious threat to a right (the veto right resulting from the unanimity clause) causing a specific disturbance.

### 2. THE JUDICIAL DECLARATION WILL FORCE THE CLASS A MANAGERS TO RESPECT UNANIMITY

The Class A Managers have made it clear that in their view the unanimity clause does not apply, which the Claimants dispute.

The positions expressed by the parties in the exchange of letters are diametrically opposed and no common ground can be found.

However, the statutory provision in question, i.e. Article 13 of the articles of association (whose counterpart is Article 16 for partners) is extremely clear.

It is therefore necessary that this point be judicially determined in order for the parties to the present proceedings to be able to validly decide on the question of the waiver of the pledge and of part of the claim on Rossoneri Sport.

This decision will have two alternative consequences:

- Either unanimity will be required at the level of the management board, if not at the level of the general meeting of shareholders, to grant the waivers to the pledge as well as to a part of the claim on Rossoneri Sport;

- Or, in the event that the Class A Managers would have, pending the decision to be taken and notwithstanding the existence of these proceedings, granted by their signatures alone waivers of the Pledge as well as of part of the claim on Rossoneri Sport, the Class A Managers could see their personal liability engaged. All rights are reserved in this respect.

The judicial declaration to be made is therefore likely to offer the Claimants a concrete and determined outcome.

**It follows from the above that it should be declared that:**

- **In accordance with Article 13 of the articles of association of Project Redblack, the waiver of the Pledge as well as the waiver of part of the claim on Rossoneri Sport requires a unanimous resolution of the managing directors of Project Redblack.**

- **In the event that there is no such unanimity within the management board, in accordance with articles 13 and 16 of the articles of association, this decision will be taken by the general meeting of Project Redblack's associates, which will have to be decided on unanimously.**

### 3. THE DECISION TO BE TAKEN MUST BE DECLARED COMMON TO SUB 3) TO SUB 9)

In the light of the above, it will also be appropriate to declare the decision to intervene common to the parties assigned sub 3) to sub 9) for the following reasons:

- Mr Giovanni CASLINI is a class B manager of Project Redblack and is therefore directly concerned by the decision to be taken;

- If unanimity is not reached in the management board, GENIO INVESTMENTS LLC and KING GEORGE INVESTMENTS LLC, as partners of Project Redblack, will be entitled to

- 13 -

      vote at the general shareholders' meeting in accordance with its articles of association and always by unanimity;

- Rossoneri Sport is 100% owned by Project Redblack. It is the entity requesting the waiver of the pledge and part of the claim.
  FOOTBALLCO INTERMEDIATE COÖPERATIEF U.A. is the purchaser of AC Milan's shares.
  These two entities will therefore have to be bound by the decision to be taken, given that one of the conditions precedent to the transfer of AC Milan's shares is precisely the waiver of the pledge.
  Thus, the judgment to be delivered must be declared common to them in order for the decision to be enforceable;

- Mr CRACA is the receiver of the pledge. In the event that the decision to be taken requires the management board of Project Redblack's unanimity to waive the pledge and a part of the claim, or if necessary the partners' general meeting, Mr CRACA, in his capacity as receiver, must be made aware of this decision in order to have it enforceable against him.

### B. IN ANY EVENT: ON ARTICLE 240 OF THE NEW CODE OF CIVIL PROCEDURE

The Claimants have been forced to bring a case before your Court to assert their rights. It would therefore be unfair to make them bear the costs they had to incur due to the negligence of the Class A Managers. The latter will therefore be ordered each, jointly and severally if not *in solidum*, if not individually for the whole, pursuant to Article 240 of the New Code of Civil Procedure, to pay to the Claimants, each individually, part of the sums incurred by them and not included in the costs, which it would be unfair to leave to the sole charge of Mr Trevisan's party, costs estimated at EUR 50,000.

### C. ON THE NEED TO ORDER PROVISIONAL ENFORCEMENT OF THE FORTHCOMING DECISION NOTWITHSTANDING ANY APPEAL AND WITHOUT SECURITY

The bad faith shown by the parties summoned in the context of the present dispute, and the existence of clear statutory provisions, justifies the granting of provisional execution to the judgment to be given by your Court, despite appeal and without deposit.

Indeed, the Class A Managers risk to permanently damage the rights of the Claimants, which would be undermined with irreversible consequences for them if this was to continue (we refer to the foregoing).

\*　　　　　　　　　　\*

THE PRESENT SUMMONS IS BASED ON THE FOLLOWING DOCUMENTS:

| | |
|---|---|
| **Exhibit n°1** | RCS extract from Project Redblack |
| **Exhibit n° 2** | Statutes of Project Redblack |
| **Exhibit n° 3** | Extract from the RCS of Rossoneri Sport |
| **Exhibit n°4** | Organizational chart of the Redblack Group |
| **Exhibit n°5** | Acquisition Facility Agreement between Rossoneri Sport and Project Redblack of 13 April 2017 |
| **Exhibit n°6** | Pledge agreement of 13 April 2017 |
| **Exhibit n°7** | Supplemental pledge agreement of 31 July 2017 |
| **Exhibit n°8** | Master Agreement on Tracking Preferred Equity Certificates entered into on 10 April 2017 |
| **Exhibit n°9** | Table summarising the TPECs and associated loans at the Project Redblack level |
| **Exhibit n°10** | Table summarising Project Redblack's funding to Rossoneri Sport |
| **Exhibit n°11** | AC Milan press release dated 1$^{er}$ June 2022 |
| **Exhibit n°12** | Summons for summary judgment served on 1$^{er}$ June 2022 |
| **Exhibit n°13** | Letter of 27 April 2022 from Project Redblack (not submitted to the Management Board) |
| **Exhibit n°14** | Letter of 2 June 2022 from Rossoneri Sport |
| **Exhibit n°15** | Letter of 25 April 2022 from DLA Piper |
| **Exhibit n°16** | Letter from CAS dated 2 May 2022 and letter from DLA Piper dated 2 May 2022 |
| **Exhibit n°17** | Letter from Befana Bagnés dated 6 May 2022 |

as well as on any other document, annex or additional document to be produced as appropriate and which could prove useful for the successful completion of its application.

**TO THESE CAUSES**

To declare the present summons admissible in form,

On the merits, declare it justified,

Therefore,

**DECLARE** that pursuant to Article 13 of the Articles of Association of Project Redblack, the waiver of the Pledge as well as the waiver of part of the claim on Rossoneri Sport requires a unanimous resolution of the managers of Project Redblack.

**DECLARE** also that in the event that there is no such unanimity within the Management Board, in accordance with Articles 13 and 16 of the Articles of Association, this decision will be taken by the General Meeting of Project Redblack's partners, which will have to decide unanimously.

IN ANY CASE

**ORDER** the Class A Managers, summoned under 1) and 2), in accordance with Article 240 of the New Code of Civil Procedure, to pay to the Claimants, each individually, part of the sums incurred by them and not included in the costs which it would be unfair to leave to the sole charge of the party of Mr Trevisan, assessed at EUR 50,000;

**DECLARE** the judgment to intervene common to Mr. Giovanni CASLINI, summoned under 3), PROJECT REDBLACK S.à r.l., GENIO INVESTMENTS LLC, KING GEORGE INVESTMENTS LLC, ROSSONERI SPORT INVESTMENT Luxembourg S.à R.L., Mr. Alfredo CRACA and FOOTBALLCO INTERMEDIATE COÖPERATIEF U.A. assigned sub 4) to 9).

**ORDER** the provisional execution of the judgment to intervene on the minutes and before registration, notwithstanding appeal or opposition and without deposit,

**RESERVE** to the Claimants all other rights, dues and actions to be asserted in due course and thereafter as may be appropriate,

As submitted.

As submitted, subject to all reservations and whereas :
- The party summoned **under 9)** is domiciled in the Netherlands, I have sent a copy of this writ translated into Dutch to its address in the Netherlands by registered letter, delivered by myself to the P&T Administration in Luxembourg, against the receipt and the acknowledgement of receipt annexed to my original and I have also sent two copies of this writ translated into Dutch by registered letter delivered by myself to the P&T Administration in Luxembourg, against the receipt and advice of delivery annexed to my original, and I have also sent two copies of this writ translated into Dutch by registered letter, delivered by myself to the P&T Administration in Luxembourg, against the receipt and advice of delivery annexed to my original, to **Havenstad Gerechtsdeurwaarders, Corsicaweg 10; NL-1044 AB Amsterdam (NH), the Netherlands,** in order to ensure the delivery of the writ to the party summoned **sub 9)** ;

- the parties summoned **under sub 5)** and **sub 6)** are domiciled in the United States of America, I have sent a copy of my writ translated into English to their respective addresses in the United States of America by ordinary mail and I have sent them a copy of my writ translated into English to their respective addresses in the United States of America by registered mail, delivered by myself to the P&T Administration in Luxembourg, against the receipts and notices of receipt annexed to my original and I have further sent respectively two copies of my writ translated into English by registered mail delivered by myself to the P&T Administration in Luxembourg, against the receipt and advice of delivery annexed to my original and I have further sent respectively two copies of my writ translated into English by registered letter delivered by myself to the P&T Administration in Luxembourg, against the receipt and advice of delivery annexed to my original to **ABC LEGAL, 633 Yesler Way, Seattle, WA-98104, USA**, in order to ensure the delivery of the writ to the parties summoned **under subparagraphs 5)** and **6)**.
- the parties summoned **under sub 8)** are domiciled in Italy, I have sent a copy of my writ translated into Italian to their respective addresses in Italy by ordinary mail and I have sent them a copy of my writ translated into Italy to their respective addresses in Italy by registered mail, delivered by myself to the P&T Administration in Luxembourg, against the receipt and the notice of receipt annexed to my original and I have also sent two copies of this writ, all translated into Italian, by registered letter delivered by myself to the Administration des P&T in Luxembourg, against the receipt and the notice of receipt annexed to my original to **Ufficio Unico degli Ufficiali Giudiziari presso la Corte di Appello di Roma, Viale Giulio Cesare, N. 52, I-00192 Roma, Italy**, in order to ensure delivery of the document to the party summoned **under 8)**.

| COUT | |
|---|---|
| DROIT | 360,00 |
| COP | 450,00 |
| VOY | 60,00 |
| ADR | 57,60 |
| H.T. | 927,60 |
| TVA | 157,69 |
| TOTAL | 1085,29 |
| ENR | 12,00 |
| Apostil. | 0,00 |
| TIM | 168,00 |
| P&T | 179,00 |
| TTC | 1444,29 |