UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re

*EX PARTE* APPLICATION OF BLUE SKYE FINANCIAL PARTNERS S.A.R.L. FOR AN ORDER UNDER 28 U.S.C. § 1782 TO TAKE EXPEDITED DISCOVERY,

BLUE SKYE FINANCIAL PARTNERS S.A.R.L.,

                Applicant.

22 Misc. 171 (KPF)

**ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      On June 27, 2022, Petitioner Blue Skye Financial Partners S.A.R.L. applied to this Court for an order under 28 U.S.C. § 1782 to take expedited discovery from Respondent Elliott Management Corporation for use in civil proceedings pending in Luxembourg.  (Dkt. #1 at 2).  Almost a year later, on May 17, 2023, the Court denied in part Respondent's motion to quash Petitioner's corresponding subpoena, compelling Respondent to "produce to Petitioner all responsive records in the possession, custody, or control of its two New York-based employees who had some connection to" the transaction at issue in the Luxembourg matters.  (Dkt. #58).

      On August 4, 2023, the Court issued a protective order governing the discovery compelled by its May 17, 2023 Order (the "Protective Order"), which order limited Petitioner's use of the compelled discovery to specific actions pending in Luxembourg and Italy (the "Permitted Actions").  (Dkt. #62 § III.D.1).  Not long  after, on September 5, 2023, Petitioner sought to modify the Protective Order to permit Petitioner's use of the compelled discovery in an

Italian proceeding (the "Italian Liquidation Proceeding") that had not been included among the Permitted Actions identified in the Protective Order. (Dkt. #63). On September 18, 2023, the Court denied Petitioner's request to modify the Protective Order (the "Modification Order"). (Dkt. #65 at 3).

The instant Order is occasioned by a letter motion the Court received on October 13, 2023, in which counsel for Respondent informed the Court that Petitioner — notwithstanding both the Protective Order and the Modification Order — had used discovery from this matter in the Italian Liquidation Proceeding. (Dkt. #77 at 1).[1] The Court has reviewed Respondent's letter and its accompanying materials, Petitioner's response to Respondent's letter and its accompanying materials (Dkt. #80), and Respondent's reply to Petitioner's response (Dkt. #81). Based on its review of the parties' submissions, the Court agrees with Respondent and finds that Petitioner's conduct violates both the Protective Order and the Modification Order.

The parties negotiated the terms of the Protective Order, ostensibly in good faith, to govern discovery in this case. (Dkt. #77 at 1). An "essential element" of these negotiations was delimiting "the specific foreign proceedings in which [Petitioner] could use the materials that [Respondent] would produce." (*Id.*). Petitioner's attempt to modify the Protective Order less than a month later suggested that the parties' negotiations were, in fact, not in good faith.

---

[1] On the basis of the procedural history recounted by Respondent, the Court dispenses with its requirement of a meet-and-confer process prior to the elevation of this dispute. Petitioner's letter brief in opposition makes clear that a meet-and-confer here would have been an exercise in futility.

But Petitioner's effort to cajole the Milan court overseeing the Italian Liquidation Proceeding into sanctioning Respondent with an adverse inference merely for abiding by this Court's Protective Order transcends gamesmanship and goes straight to contempt.

The Court believes that Petitioner is in civil contempt of the Protective Order and the Modification Order. "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Absolute Nevada, LLC* v. *Baer*, No. 21-50, 2022 WL 350255, at *2 (2d Cir. Feb. 7, 2022) (summary order) (quoting *Spallone* v. *United States*, 493 U.S. 265, 276 (1990)). In the Second Circuit, "[c]ivil contempt may be imposed for failure to comply with a court order if '(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner.'" *United States Sec. & Exch. Comm'n* v. *Gottlieb*, No. 21-2516, 2023 WL 193628, at *1 (2d Cir. Jan. 17, 2023) (summary order) (quoting *CBS Broad. Inc.* v. *FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)).

The instant case would appear to meet the *Gottlieb* standard. *First*, the Protective Order itself and the Court's refusal to grant Petitioner's request to modify the Protective Order make it abundantly clear that Petitioner was precluded from using the compelled discovery materials in the Italian Liquidation Proceeding. (*See* Dkt. #62 § III.D.1 ("All Discovery Material produced, or information derived therefrom, including but not limited to Protected Material, shall be used solely for the purposes of [the Permitted

3

Actions], and any appeals from such actions, and shall not be used for any other purpose."); Dkt. #65 at 1-3 ("Now before the Court is Petitioner's September 5, 2023 request to modify the Protective Order to permit Petitioner's use of the compelled discovery in [the] Italian Liquidation Proceeding … the Court DENIES Petitioner's request[.]"); Dkt. #77-2 ¶ 13 ("Given that the [P]rotective [O]rder is an order of the United States District Court, a violation could subject [Petitioner] to sanctions, including a citation of contempt.")).

*Second*, the filings in the Italian Liquidation Proceeding submitted to this Court by Respondent are clear and convincing proof of Petitioner's use of the compelled discovery in violation of this Court's orders.  (*See generally* Dkt. #77-1, 77-2).  To be sure, Petitioner did not actually include copies of the protected documents in its submission in the Italian Litigation Proceeding.  However, Petitioner does far more than tout these documents as being "of considerable importance" (Dkt. #77-1 at 10), "strictly pertinent" (*id.* at 12), and of "extreme relevance" (*id.* at 13);[2] Petitioner specifically outlines the manner in which a subset of the documents produced by Respondent in this case would prove one of Petitioner's claims in the Liquidation Proceeding (*id.* at 11, last paragraph of text; *id.* at 12, last two paragraphs).  Petitioner then pivots to paeans to "the truth" (*id.* at 13, 14) — thereby intimating that Respondent is somehow blocking the Milan court's assessment of the facts, and that this Court is somehow complicit in those efforts, when in fact it was Petitioner's artfulness

---

2    The Court takes no position as to the accuracy of Petitioner's characterization of the discovery materials at issue.

4

in its protective order negotiations that prompted this Court's decision. And to top it off, with the inclusion of Mr. Levy's declaration, Petitioner purports to comply with this Court's directives while importuning the Milan court to negate them through the sanction of an adverse inference.

*Third*, neither party has reported to the Court any effort on behalf of Petitioner — let alone a diligent one — to withdraw the offending submissions from the Italian Liquidation Proceeding.

In this regard, the Court finds *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400 (S.D.N.Y. 2016), on which Petitioner relies, to be readily distinguishable from the instant case. Petitioner emphasizes that court's "distinction between the use of knowledge regarding the existence of certain documents versus the use of the confidential content within th[ose] documents." *Id.* at 404 (quoting *Milwaukee Elec. Tool Corp.* v. *Snap-on Inc.*, No. 14 Civ. 1296 (JPS), 2016 WL 1719657, at *4 (E.D. Wis. Mar. 16, 2016)). But Petitioner does not merely make use of its knowledge of the existence of certain documents. Rather, Petitioner exploits the confidential content within those documents. Indeed, Petitioner seeks an adverse inference based precisely upon what it claims the confidential content within those documents reveals. Moreover, for the reasons articulated by Respondent in its reply submission, Petitioner's argument regarding references to that confidential content in public filings on this Court's docket is pure sophistry. (*See* Dkt. #81 at 1 ("[Petitioner] is permitted to use Discovery Material in this action.")).

5

Further, *Royal Park* involved a defendant who "us[ed] its knowledge of the existence of discovery documents in one case to advocate for their production in other litigation in which those documents [were] also discoverable." 192 F. Supp. 3d at 404. In this case, Petitioner came to this Court requesting discovery material that Petitioner could not get absent an order from this Court compelling such discovery. (Dkt. #1; *see id.* at ¶ 1 ("The documents from sources in this District are otherwise unobtainable for use in the [foreign proceedings] absent application under § 1782.")). This Court compelled such discovery, subject to significant limitations and protections. (Dkt. #58, 62). And the Court reaffirmed such protections in the Modification Order. (Dkt. #65). In light of these circumstances, Petitioner's conduct is precisely the kind of "prejudicial misus[e] of confidential discovery information" that the *Royal Park* court attempted to distinguish from the defendant's "legitimate use" of discovery information in that case.

The Court is skeptical that, on this record, Petitioner could have believed in good faith that it was abiding by this Court's orders. However, to the extent that it did, this Order clarifies Petitioner's misperceptions. What is more, if Petitioner intended to act in good faith, it can now — enlightened by this Order — withdraw the offending submission from the Italian Liquidation Proceeding. If it chooses not to do so, the Court's suspicions of Petitioner's bad faith will have been confirmed. Accordingly, if the submission is not withdrawn from the Italian Liquidation Proceedings within fourteen (14) days of this Order, this Court will GRANT Respondent's motion for sanctions to the extent that the

6

Court will (i) order Petitioner to return to Respondent all materials that Respondent has produced pursuant to this Court's orders thus far and (ii) order Respondent not to produce any additional materials. In any event, the Court expects that Petitioner will arrange for this Order to be translated into Italian and submitted to the Milan court overseeing the Italian Liquidation Proceeding.

The Court further concludes that Petitioner's request that the Court order Respondent (i) to meet and confer with Petitioner regarding issues in Respondent's production and (ii) to set a deadline for Respondent's production of all responsive records (Dkt. #82) has been rendered moot by the Court's resolution of Respondent's sanctions motion. The Court understands that Respondent has agreed to meet and confer with Petitioner regarding further production deadlines within two business days of the issuance of this Order. (Dkt. #83).

The Clerk of Court is directed to terminate the pending motions at docket entries 77 and 82.

SO ORDERED.

Dated: October 27, 2023
New York, New York

*Katherine Polk Failla*
_____
KATHERINE POLK FAILLA
United States District Judge