# HOLWELL SHUSTER & GOLDBERG LLP

<u>VIA ECF</u>                                                                                    April 9, 2024

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *In re Blue Skye Financial Partners S.à r.l.*, No. 1:22-mc-00171-KPF (S.D.N.Y.)

Dear Judge Failla,

This is an emergency request to clarify or modify the protective order ("PO") to confirm that Applicant Blue Skye may disclose the Section 1782 material produced here to counsel for Blue Skye's adversaries in a Luxembourg criminal proceeding scheduled to go to trial the week of <u>April 21</u>. The PO was recently modified in February 2024 to allow Blue Skye to use all Section 1782 material in that Luxembourg case. Dkt. 87. As Blue Skye's adversaries in the Luxembourg case are affiliates of Respondent Elliott Management Corporation ("EMC"), Blue Skye inquired whether EMC would require those affiliates to sign the Endorsement to the PO. *Id.* App. A. EMC objected to Blue Skye's proposed disclosure, compelling this request to ensure that Blue Skye may use discovery in the Luxembourg case consistent with the plain text and intent of the PO and provide the discovery to its opposing counsel in the Luxembourg criminal case in advance of trial.

**Background**

As the Court is aware, Blue Skye initiated this Section 1782 proceeding to obtain discovery regarding a transaction concerning the sale of the AC Milan club in 2022, alleging among other things that it was improperly excluded from the sale process. Elliott Investment Management ("Elliott") vehicles indirectly held ~95% of the equity of the club through their ~95% stake in Project Redblack, with Blue Skye indirectly holding the remainder. In turn, Project Redblack controls Rossoneri Sport, the seller in the transaction at issue. ███████████████████████████████████████████████████████████████████████████████ ███████ Ex. A at 1-2. In September 2023, Project Redback and Rossoneri Sport brought a criminal complaint in Luxembourg against Blue Skye and certain of its affiliates.

On January 5, 2024, counsel for Blue Skye contacted counsel for EMC to request that the discovery in this action be usable in that Luxembourg criminal proceeding, given, among other things, that it was started by "Elliott/affiliates" after the original protective order. Ex. B at 10. Two weeks later, EMC's counsel agreed without disputing that Elliott affiliates started the Luxembourg criminal case, Ex. B, and, after negotiations, the PO was so modified on February 15, 2024. In the meantime, although EMC had agreed to the modification, it objected to having Blue Skye's criminal counsel review the material while negotiations were ongoing. *Id.* at 6.

After the PO was amended, criminal counsel for Blue Skye in the Luxembourg criminal case was finally able to begin its review, and ultimately determined last week to use certain evidence obtained through this proceeding at the upcoming trial in that case.

Consequently, given prior misunderstandings between the parties, and in a good-faith effort to avoid future disputes regarding the PO, Blue Skye reached out to EMC on April 5 to advise EMC of its intentions and to confirm two things: (1) Whether EMC agreed that counsel for Project Redblack and Rossoneri Sport were already covered by the PO (given the affiliation between Project Redblack/Rossoneri Sport and Elliott); and, alternatively, (2) Whether EMC's position was that counsel for Project Redblack and Rossoneri Sport should sign the Endorsement attached to the PO. *See* Ex. C. We emphasized that no Protected Material would be provided to other defendants in the Luxembourg Criminal Proceeding. *Id.* at 6. We did not believe this would be controversial given that Elliott controls Redblack and Rossoneri, and, indeed, counsel for EMC told us they had represented Rossoneri Sport in certain aspects of the AC Milan transaction.

Unfortunately, EMC took the position that—despite its affiliation with Redblack and Rossoneri, and despite the fact that the PO was expressly amended to permit use of Protected Material in the Luxembourg criminal case—Protected Material supposedly cannot be shared with counsel for Project Redblack and Rossoneri Sport, *even if those attorneys sign the Endorsement to the PO.* Blue Skye is thus compelled to bring this letter motion.[1]

**The Court should clarify the terms of the Protective Order**

The Court should clarify that counsel for Project Redblack and Rossoneri Sport—Elliott and EMC's affiliates and Blue Skye's adversaries in the Luxembourg criminal case—may access Protected Material without Blue Skye violating the protective order. Section III.D.4 of the PO provides that Protected Material may be provided to counsel for entities other than EMC or Blue Skye if (1) providing the evidence is "consistent with the terms of th[e] Order," and (2) "an appropriate protective order or other reliable assurance that the Protected Material will be maintained as confidential" is given, "including but not limited to having any further recipient sign the Endorsement . . . and enforcing the Endorsement on [EMC's] behalf." Furthermore, to the extent that EMC contends that it is "insufficient" for Project Redblack's and Rossoneri Sport's lawyers to sign the Endorsement—including if those lawyers refuse to sign it—EMC has the right to seek an additional protective order to protect its interest. PO § III.D.4.

Blue Skye requests an order clarifying that, under § III.D.4, the PO's terms are satisfied *ipso facto* given that Project Redblack and Rossoneri Sport are under the control of Elliott entities, and that Elliott and EMC may take measures itself to control the conduct of its own affiliates and safeguard its own confidences. Alternatively, Blue Skye asks that the Court clarify that the PO is satisfied if such counsel sign the PO Endorsement, which requires them to abide by the terms of the PO and will subject them to the Court's jurisdiction for enforcement purposes, and that if such counsel refuses to sign, then disclosure would still be permitted unless EMC obtains a protective order from this Court. Any other reading of § III.D.4 would contradict the PO itself, which expressly provides that Blue Skye may use Protected Material to mount a defense in Luxembourg. PO § III.A. That permitted use must necessarily entail disclosure to its adversaries.

---

[1] On April 8, Blue Skye's counsel asked to meet and confer on this issue, but that request was ignored by EMC's lawyers, who instead responded by email to state their position that the PO will be violated if counsel for Project Redblack and Rossoneri Sport receive Protected Material—even if they provide a "reliable assurance" that the PO will be complied with by signing the PO Endorsement. Ex. C.

**Alternatively, the Court should allow disclosure under PO §§ III.B.8, III.C.7**

Under the PO, Blue Skye may disclose Protected Material to "[a]ny person designated by this Court upon such terms as this Court may deem proper." PO §§ III.B.8, III.C.7. In the alternative to the foregoing, Blue Skye requests that the Court authorize disclosure to counsel for Project Redblack and Rossoneri Sport in the Luxembourg criminal case given that Blue Skye is indisputably permitted to use discovery to mount a defense in that case. *See* PO § III.A.

**Alternatively, the Court should modify the Protective Order**

Although a heightened showing is sometimes needed to modify a protective order, this higher standard does *not* apply where there has been no "reasonable reliance by a party." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001). As a result, a lower standard for modification applies where, as here, discovery was compelled and would have been produced even without a protective order. Dkt. 65 at 2 ("[T]he Protective Order governs discovery that Respondent was compelled to produce[.]"); *Arcesium LLC v. Advent Software, Inc.*, 2022 WL 621973, at *5 (S.D.N.Y. Mar. 3, 2022) ("'[W]here the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong.'") (citation omitted).[2]

Thus, in the alternative to the foregoing, the Court should exercise its discretion to modify the PO and expressly permit disclosure to counsel for all Blue Skye adversaries in the proceedings abroad for which use is permitted. Discovery was awarded for use in foreign proceedings, and the parties negotiated and agreed upon the PO for the purpose of permitting Blue Skye to use discovery in three separate cases, including the Luxembourg Criminal Proceeding. PO § I.C. (adding "Luxembourg Criminal Proceeding" to definition of "Authorized Criminal Proceeding"); § I.N. (defining "Luxembourg Criminal Proceeding"). The Court should effectuate that clear intention and permit Blue Skye to disclose discovery to its adversaries in those cases under conditions that do not render the discovery and protective order self-defeating. *In re World Trade Ctr. Disaster Site Litig.*, 2008 WL 728871, at *1 (S.D.N.Y. Mar. 18, 2008) ("To the extent that the clauses of the protective order make these purposes difficult to achieve, they will have to be modified.").

Given that Blue Skye must provide notice of the evidence to the Luxembourg Court in advance of the trial, we respectfully request a ruling on an expedited basis. Out of an abundance of caution, opposing counsel in the Luxembourg case are being requested to sign the endorsement.

Respectfully submitted,
/s/ Vincent Levy

---

[2] *See also, e.g., Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 2822167, at *4 (S.D.N.Y. July 7, 2021); *Tradewinds Airlines, Inc. v. Soros*, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 2010 WL 779314, at *7 (S.D.N.Y. Mar. 2, 2010), *objections overruled*, 2010 WL 1459178 (S.D.N.Y. Apr. 12, 2010), *aff'd*, 415 F. App'x 286 (2d Cir. 2011). This case law was not brought to the Court's attention prior to its decision with respect to Blue Skye's first request to modify the original Protective Order.