Andrew Ditchfield
+1 212 450 3009
andrew.ditchfield@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

**Davis Polk**

November 26, 2025

Re: *In re Application of Blue Skye Financial Partners S.à r.l.*, No. 22 Misc. 171 (KPF)

Hon. Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Dear Judge Failla:

We write on behalf of Elliott Management Corporation ("EMC") to request a pre-motion conference to seek sanctions for intentional violations of court orders by Blue Skye Financial Partners S.à r.l. ("Blue Skye"). Counsel for EMC recently learned that Blue Skye, on September 23, 2025, filed a document in a foreign court asserting that Blue Skye was defrauded and obtained documents in this action that "**shed full light on this fraud**" but that "**it is not possible, for the purposes of these proceedings, to refer to the information thus obtained, given the restrictive conditions attached by the US judge to the disclosure of the documents**." (Ex. A (emphases added).[1]). This statement is false, deceptive and plainly an abuse of this § 1782 proceeding. Any limitations on the disclosure resulted from the Protective Order that Blue Skye negotiated, not "the US judge." Remarkably, Blue Skye has now twice engaged in this type of subterfuge, which this Court the first time explained "**transcends gamesmanship and goes straight to contempt**." (ECF No. 84 at 3 (emphasis added).) The Court previously gave Blue Skye the benefit of the doubt, allowing it to avoid sanctions by withdrawing the offending filing in the foreign jurisdiction. (*Id.* at 6.) Yet Blue Skye has demonstrated that the Court's leniency was unwarranted, and sanctions now should be imposed. The Court should order Blue Skye return all Discovery Materials produced by EMC, bar any additional discovery, and compel it to pay certain costs incurred by EMC.[2]

**Blue Skye Agreed To Limited Use And Disclosure Of Confidential Materials**

Blue Skye sought discovery through this § 1782 proceeding that expressly included "confidential" information relating to the AC Milan transaction. (ECF No. 34 at 10.) "In issuing its order compelling discovery from EMC, the Court took into consideration Blue Skye's willingness to accommodate confidentiality concerns by stipulating to an adequate protective order." (ECF No. 98 at 3.) The parties "heavily negotiated" (ECF No. 65 at 3) and subsequently amended a Protective Order. (ECF Nos. 62, 87, 102.) The Court has "credit[ed] EMC's good-faith assertion that it has relied upon the limitations in the Protective Order in producing thousands of sensitive documents." (ECF No. 98 at 3.) The Protective Order governs both the *use* and the *disclosure* of produced documents ("Discovery Material"[3])—including a subset of Discovery Material designated as Confidential or Highly Confidential ("Protected Material").

---

[1] Unless indicated, all internal quotations, alterations, emphases, footnotes, and citations are omitted.

[2] As the Court previously observed, a meet and confer would be futile. (*See* ECF No. 84 at 2 n.1.)

[3] "Discovery Material" includes "[a]ll documents, items, or other information . . . produced or generated in disclosures or responses to discovery in this Action." (ECF No. 102 at 2.)

**Davis Polk**

(*See* ECF No. 102 §§ II, III.)  Blue Skye agreed to *use* the Discovery Material only in connection with certain enumerated foreign proceedings and that the material "shall not be used for any other purpose." (*Id.* § III.D.1.)  The Protective Order also limits the *disclosure* of Protected Material "only to the categories of persons and under the conditions described in this Order," (*id.* § III.A).  These limitations are complementary, and Blue Skye must always adhere to both.  Indeed, "[i]f the document is filed [in a Transaction-Related Proceeding] . . . the filing Party shall ensure that Protected Material is not disclosed in a manner that violates this Order." (*Id.*)

**Blue Skye Previously Violated This Court's Order In A Filing In An Italian Court**

Barely four weeks after agreeing to the Protective Order, Blue Skye attempted to renegotiate it to obtain permission to use the documents in the Italian Liquidation Proceeding.  (ECF No. 63.)  The Court denied Blue Skye's request, finding that Blue Skye "failed to demonstrate the requisite 'extraordinary circumstances' or 'compelling need,'" to unwind the Protective Order.  (ECF No. 65 at 3 (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979).)

Rather than accept this decision, Blue Skye filed a document in the Italian Liquidation Proceeding that described documents it had obtained in this action and asserted that the documents revealed "the truth" but could not be disclosed because of this Court's order, "thereby intimating that [EMC] is somehow blocking the Milan court's assessment of the facts, and that this Court is somehow complicit in those efforts." (ECF No. 84 at 4.)  The Court stated that it was "skeptical that, on this record, [Blue Skye] could have believed in good faith that it was abiding by this Court's orders." (*Id.* at 6.)  But the Court gave Blue Skye the opportunity to withdraw its filing to avoid the sanctions EMC requested, which included the return of all documents and a bar on seeking further discovery.  (*Id.* at 6–7.)

**Blue Skye Violated This Court's Order Again In A Filing In A Luxembourg Court**

On September 23, 2025, Blue Skye engaged in nearly identical behavior in a different court, by again "intimating that [EMC] is somehow blocking the [foreign] court's assessment of the facts, and that this Court is somehow complicit in those efforts." (*Id.* at 4.)  As before, Blue Skye petitioned this Court to amend the Protective Order to remove certain restrictions, this Court denied Blue Skye's application, and then Blue Skye made a filing in a foreign proceeding in which it asserted that it had obtained evidence proving fraud but was precluded from disclosing that evidence in the filing as a result of this Court's order.

Blue Skye's recent violation of the Protective Order concerns a filing made in the Luxembourg SPA Annulment Action, a proceeding in which it may *use*, but not necessarily disclose, Discovery Material.  On the eve of a hearing, Blue Skye realized it had a problem: if it publicly filed and referred to the Protected Material in the SPA Annulment Action, it would breach the *disclosure* provision of the Protective Order because Luxembourg court proceedings and all filings are public.  Thus, Blue Skye once again sought to amend the Protective Order to allow it to publicly disclose materials that EMC had designated as Confidential or Highly Confidential.  (ECF No. 94.)  Once again, the Court denied Blue Skye's application "for substantially the reasons set forth in EMC's letter." (ECF No. 98 at 3.)  As EMC explained, allowing Blue Skye to use the materials in the SPA Annulment Action did not mean that Blue Skye could necessarily file them publicly.  (ECF No. 96 at 2–3.)  In fact, Blue Skye argued that it did not matter if the

discovery it obtained was admissible because it could still use the documents in other ways like developing its litigation strategy.  (*Id.* at 2.)

After the Court denied Blue Skye's request for permission to file publicly all Protected Material, Blue Skye, on April 14, 2025, challenged EMC's confidentiality designations as to certain documents.  (Ex. B.)  EMC assumed that Blue Skye was operating in good faith, and the parties spent months negotiating modifications to the confidentiality designations, with EMC agreeing to remove the designations for certain documents or portions of documents.  The parties reached agreement on September 10, 2025, and EMC made a revised production of the documents on September 19, 2025.  (Ex. C).  Remarkably, just four days later, Blue Skye returned to its old playbook.  On September 23, 2025, Blue Skye made a filing in the SPA Annulment Action implying that Elliott entities committed fraud and that "Ms Katherine POLK FAILLA, judge at the United States District Court for the Southern District of New York, ordered the disclosure of" documents that "**shed full light on this fraud**" but that "it is not possible, for the purposes of these proceedings, to refer to the information thus obtained, **given the restrictive conditions attached by the US judge to the disclosure of the documents**."  (Ex. A (emphases added).)

Blue Skye's statement is remarkably similar to the sanctionable statements it made in the Italian Liquidation Proceeding because both statements imply that this Court "is somehow complicit" in efforts to obscure the truth, "when in fact it was [Blue Skye's] artfulness in its protective order negotiations that prompted this Court's decision."  (ECF No. 84 at 4–5.)  But Blue Skye's conduct in Luxembourg is even worse because Blue Skye not only falsely described the Protective Order, which it negotiated and freely entered into, as "restrictive conditions *attached by the US judge* to the disclosure of the documents" but also failed to mention that it had just reached an agreement with EMC to remove the restrictions for certain documents precisely because it purportedly wanted to disclose them to the Luxembourg court.

**This Court Should Impose Sanctions on Blue Skye**

Given Blue Skye's repetitive deceptive conduct in violation of this Court's orders, as to which it was previously warned, Blue Skye is no longer entitled to the benefit of the doubt, and sanctions should now be imposed.  *See In re Gorsoan Ltd.*, 2020 WL 3172777, at *9 (S.D.N.Y. June 15, 2020) (imposing sanctions in § 1782 proceeding when party "repeatedly engaged in bad faith tactics"); *Minskoff v. Mendoza*, 2025 WL 2505472, at *16–17 (E.D.N.Y. Sept. 1, 2025) (sanctioning defendant for repeated violation of protective order and subsequent court orders after court had denied "request to use the confidential information" and "previously warned of the consequences of violating the protective order").

EMC respectfully requests that the Court order Blue Skye: (1) to amend its filing in the SPA Annulment Action to remove all references to this Action and documents obtained in this Action; (2) to return to EMC all copies of Discovery Material it has received; (3) not to make any argument in any foreign proceeding based on any Elliott entity's nonproduction of documents or clawback of the Discovery Materials; (4) not to seek any further § 1782 discovery relating to this matter; and (5) to pay EMC's attorneys' fees and expenses incurred in negotiating the modifications to the confidentiality designations and seeking this relief.  *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 71 (S.D.N.Y. 2007) (awarding similar relief); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 10740191, at *1–2 (S.D.N.Y. July 6, 2009) (same).

Hon. Katherine Polk Failla

**Davis Polk**

Respectfully submitted,

*/s/ Andrew Ditchfield*

Andrew Ditchfield

cc: All counsel of record (via ECF)

**Electronic Filing**

November 26, 2025

4